**William CROMWELL, Plaintiff,**

**v.**

**Thomas COUGHLIN, III, Commissioner of New York State Correctional Services, Thomas Keane, Superintendent of Sing Sing Correctional Facility, Defendants.**

**No. 91 Civ. 0122 (LBS).**

United States District Court, S.D. New York.

Sept. 4, 1991.

---

William Cromwell, pro se.

Robert Abrams, Atty. Gen. of State of N.Y., New York City (Marcie S. Mintz, Asst. Atty. Gen., of counsel), for defendants.

## OPINION

SAND, District Judge.

This is a case about the right of certain inmates in the State of New York to participate in conjugal visits while in prison. Plaintiff William Cromwell, proceeding *pro se*,[1] is incarcerated at Sing Sing Correctional Facility ("Sing Sing"). He brings this action pursuant to 42 U.S.C. § 1983 (1988) seeking injunctive relief for an alleged violation of his procedural and substantive due process rights under the Fourteenth Amendment to the United States Constitution. Defendants Thomas Coughlin, III, Commissioner of New York State Correctional Services (the "Commissioner"), and

---

**1.** Although the complaint contains class action allegations, only an attorney may represent another person. We defer ruling on the class action status in light of the disposition made in this opinion.

Thomas Keane, Superintendent of Sing Sing (the "Superintendent") move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons stated below, we find that it would be premature to dismiss the case in its entirety on the present record. We refer the case to the Court's Pro Se Clerk for the appointment of counsel.

## FACTS

Plaintiff is serving an eighteen years to life sentence which began in 1983. On July 28, 1990, while incarcerated at Sing Sing, plaintiff was married. After his marriage, plaintiff inquired about New York State's Family Reunion Program (the "Program") which enables certain inmates to receive conjugal visits. According to plaintiff's complaint, the Program has been established at all but two state maximum security facilities and is available at only two medium security facilities. In total, the State of New York operates the Program at 13 of its approximately 60 prison facilities. *See* Appendix to Plaintiffs Brief in Opposition to Summary Judgment.

Under New York Correction Law, the Commissioner is given the statutory authority to establish family reunion programs.[2] N.Y. Correct. Law §§ 112, 146 (McKinney 1987). In 1985, regulations regarding the Program were promulgated and codified in the New York Codes, Rules and Regulations (the "NYCRR"). The purpose of the Program is "to provide selected inmates and their families the opportunity to meet for an extended period of time in privacy." 7 NYCRR § 220.1. Selection of the inmates and penal facilities for participation in the Program is, however, at the discretion of the Commissioner. According to 7 NYCRR § 220.2, "Any inmate has the right to make application for participation in the Family Reunion Program, if their [sic] facility of residence offers the program . . ." The parties agree that the New York State Department of Corrections ("DOC") has not implemented the Family Reunion Program at Sing Sing. The only question is whether the determination not to implement the Program at Sing Sing, while it has been established at a number of other State correctional facilities, violates plaintiff's constitutional rights.

## DISCUSSION

■ Plaintiff, who has been denied conjugal visits while in prison, appears to advance two arguments in support of his claim that his procedural and substantive due process rights have been violated.[3] First, he alleges that New York State in the regulations it adopted to govern its conjugal visits program created a liberty interest and that the denial of his request to participate is a violation of his constitutional rights. Second, plaintiff claims that he has a fundamental right to privacy in marital relations. Plaintiff appears to be arguing that certain sexual rights and privileges are conferred on a husband and wife by the marriage bond, and that he is entitled as a matter of right to participate in conjugal visits while in custody.[4] While

---

**2.** Section 112 states, in pertinent part: "1. The commissioner of correction shall have the superintendence, management and control of the correctional facilities in the department and of the inmates confined therein, and of all matters relating to the government, discipline, policing, contracts and fiscal concerns thereof. He shall have the power and it shall be his duty to inquire into all matters connected with said correctional facilities. He shall make such rules and regulations, not in conflict with the statutes of this state."

Section 146 states, in pertinent part: "The following persons shall be authorized to visit at pleasure of all correctional facilities: [listing various federal and state appointees] . . . No other person not otherwise authorized by law shall be permitted to enter a correctional facili-

ty except by authority of the commissioner of correction under such regulations as the commissioner shall prescribe."

**3.** Plaintiff liberally cites to federal and state laws in his memorandum of law. The Court will address only those claims upon which relief may conceivably be granted.

**4.** Plaintiff is also, arguably, advancing an equal protection claim alleging that his wife has been discriminated against since the lack of conjugal visits with her husband denies her the right to "consummate" her marriage. Alternatively, plaintiff's equal protection claim appears to be based on what he alleges is an unconstitutional classification by the State since it offers conjugal visit benefits to some prisoners in a few

the defendants agrees that certain fundamental rights are implicated in the case, they argue that, as a matter of law, incarcerated individuals are not entitled to the full panoply of rights afforded under the United States Constitution and that summary judgment should be granted.

■ A motion for summary judgment should be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating "the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975). In determining whether or not there is a genuine issue, a court must resolve all ambiguities and draw all inferences against the moving party. *See United States v. Diebold Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *see also* Advisory Committee Notes to the 1963 Amendments to Rule 56.

In the context of a summary judgment motion, our focus turns to the question of the legal framework by which to analyze constitutional claims advanced by prisoners. In *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974), *rev'd on other grounds,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), the Supreme Court held that prison walls do not form a barrier separating prison inmates from the protections of the Constitution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will stand as a protectorate. *See Lee v. Washington,*

390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968) (Equal Protection Clause protects prisoners against racial discrimination); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (protections of due process not forfeited by prisoners).

On the other hand, the Supreme Court has been equally unequivocal in its direction that the problems involving prisons in this country are complex and not to be lightly interfered with by federal courts. Administering prisons requires "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley,* 482 U.S. 78, 85, 107 S.Ct. 2254, 2259–60, 96 L.Ed.2d 64 (1986). The message was clear. Prison officials and not the courts are to "make the difficult judgments concerning institutional operations." *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977).

■ In responding to these competing principles, the Supreme Court resolved the question of what standard of review applies in the prison context involving constitutional claims. *See Turner,* 482 U.S. at 89, 107 S.Ct. at 2261–62. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id; see also O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987).[5] The reasonableness of a regu-

---

prisons while denying the right to others. Both of these claims fail as a matter of law. When the state uses any kind of classification that is not invidious or suspect a plaintiff's equal protection claim will only succeed if it can be shown that the classification is not reasonably related to a legitimate state purpose. *See Eisenstadt v. Baird,* 405 U.S. 438, 452, 92 S.Ct. 1029, 1037–38, 31 L.Ed.2d 349 (1972). It can not be successfully argued that any classification in this case is unreasonable. Higher scrutiny is only required if a suspect class is involved or if a classification burdens a fundamental right. *See Trimble v. Gordon,* 430 U.S. 762, 767, 97 S.Ct. 1459, 1463, 52 L.Ed.2d 31 (1977); *Zablocki*

*v. Redhail,* 434 U.S. 374, 388, 98 S.Ct. 673, 682, 54 L.Ed.2d 618 (1978). There is no suspect class involved in this case. Any question about the burdening of a fundamental right involves similar standards and arguments as those advanced in plaintiff's substantive due process claim. The Court need not address those questions under an equal protection analysis.

5. In rejecting arguments that a strict scrutiny analysis was appropriate the Court concluded that every administrative judgment would be subject to the possibility that "some court somewhere would conclude that it had a less restrictive way of solving the problem at hand" or

lation or practice is to be determined by consideration of a number of factors. First, there must be a rational relationship between the prison regulation and the governmental interest justifying it. *See Turner*, 482 U.S. at 89, 107 S.Ct. at 2261–62. Second, a court must consider whether there are alternative means of exercising the right in a manner that is consistent with the prison setting. *Id.* at 90, 107 S.Ct. at 2262. A third consideration is the impact that accommodation of the right will have on the allocation of prison resources and on other prisoners and guards. *Id.* Finally, the availability of ready alternatives should be considered. Unless an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may conclude that the regulation satisfies the reasonably related standard. *Id.* 482 U.S. at 90–91, 107 S.Ct. at 2262–63.

## A. *Procedural Due Process*

Before applying the *Turner* balancing test, a court must evaluate each alleged violation and determine that a constitutional right exists. Drawing all inferences in favor of the nonmoving party, as the Court must on a motion for summary judgment, the first question in this case is whether the plaintiff has asserted a valid liberty interest in the right to conjugal visits. *See Diebold*, 369 U.S. at 655, 82 S.Ct. at 994. The Fourteenth Amendment reads in part: "nor shall any State deprive any person of life, liberty, or property, without due process of law," and protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975–76 (1974); *see also Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989). The types of interests that constitute "liberty" for Fourteenth Amendment purposes, however, are not unlimited. In order for an interest to rise to the level of a liberty interest, it must constitute more than an "abstract need or desire," *Board of Regents v. Roth*, 408 U.S. 564, 577, 92

S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), and must be based on more than "a unilateral hope." *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460, 2464–65, 69 L.Ed.2d 158 (1981). "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to [that interest]." *Thompson*, 490 U.S. at 460, 109 S.Ct. at 1908.

██ Protected liberty interests may be derived from two sources—the Due Process Clause itself and the laws of the States. *See Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983). In this instance, the plaintiff claims that the State of New York created, by the promulgation of its prison regulations, a liberty right in conjugal visits. In the context of a prisoner's right to participate in a particular visitation program, the Supreme Court has held that courts must "examine closely the language of the relevant statute and regulation" to determine whether certain state-created liberty interests have been created. *Thompson*, 490 U.S. at 461, 109 S.Ct. at 1909. Before a prisoner may claim entitlement to a liberty interest in a program, it must be shown that the state has placed substantive limitations on official discretion in regard to participation in that program. *Id.* at 462, 109 S.Ct. at 1908; *see also Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871–72 (1983) (liberty interest created by repeated use of explicitly mandatory language in regulation involving segregation in prison); *Dumschat*, 452 U.S. at 467, 101 S.Ct. at 2465–66 (liberty interest in regulation that requires parole to be granted unless certain standards are met, even though the decision is "necessarily subjective"). *But see Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (no liberty interest in interstate prison transfer left to "complete[ly] unfettered" discretion of administrator).

██ In applying this standard to the New York regulations that establish the visitation program at issue in this case, the

---

determining that certain privileges should or should not exist. *Turner*, 482 U.S. at 89, 107

S.Ct. at 2261–62. *See also Procunier*, 416 U.S. at 407, 94 S.Ct. at 1808.

Court concludes that no liberty interest has been created. To the contrary, the regulations afford the Commissioner of Corrections broad discretion in the establishment of various prison visitation programs, including conjugal visits. The NYCRR states that an inmate *may be eligible* for participation in the Family Reunion Program if, *inter alia,* "[t]he inmate ... [is] a resident *of a facility that offers the [P]rogram.*" 7 NYCRR § 220.3(a)(1) (emphasis added). Several other sections of the regulation adopt similar language implying that DOC did not intend that the Program be implemented at all State correctional facilities or none at all. The New York Correction Law states that no visitors shall be permitted to enter a correctional facility *"except by authority of the commissioner of correction under such regulations as the commissioner shall prescribe."* N.Y. Correct. Law § 146 (McKinney 1987) (emphasis added).

The effect of these two sections of New York Correction Law is that the Commissioner has discretionary authority to determine whether a particular prison visitation program should be established at certain State correctional facilities and which prisoners shall be granted the privilege to participate in the program. As such, plaintiff has no valid claim of entitlement to a liberty interest in the establishment of the Program at Sing Sing. Since no constitutional right is at stake, this Court need not consider what process is due under the Fourteenth Amendment. Likewise, the Court need not apply the balancing test articulated by the Supreme Court in *Turner,* 482 U.S. at 89–91, 107 S.Ct. at 2261–63.

B. *Substantive Due Process*

While plaintiff does not have a liberty interest in the establishment of the Family Reunion Program at Sing Sing, plaintiff's inability to participate in the Program may arguably constitute a violation of his fundamental right to marital privacy. Several Supreme Court decisions have carved out a fundamental right to privacy as it relates to marriage, *Turner v. Safley,* 482 U.S. at 91, 107 S.Ct. at 2262–63; *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18

L.Ed.2d 1010 (1967); *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); procreation, *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); and contraception, *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). Moreover, the Supreme Court "has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment" *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 639–40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974).

Recently, the Supreme Court held that prisoners do not shed the fundamental right to marriage at the prison gate. *See Turner,* 482 U.S. at 91, 107 S.Ct. at 2262–63. Although acknowledging the substantial restrictions imposed as a result of incarceration, the Court concluded "[m]any important attributes of marriage remain." *Id.* at 95, 107 S.Ct. at 2265. As the Court wrote "inmate marriages like any others are expressions of emotional support and public commitment." *Id.* Applying its newly created *Turner* balancing test, the Court concluded that most regulations denying or severely restricting marriage will not withstand scrutiny under the reasonable relationship test. *Id.* at 97, 107 S.Ct. at 2266. In *Turner,* the Court rejected the State's claims that both security and rehabilitation concerns dictated the need to prohibit inmates from marrying. *Id.* at 97–99, 107 S.Ct. at 2266–67.

While it is clear that prisoners have a fundamental right to marry and that members of the community at large have a constitutional right to marital privacy, the Supreme Court has not defined the outer limits of an inmate's right to marital privacy and conjugal visits while incarcerated. Assuming that there is some fundamental right to marital privacy, this Court must determine whether the State's interest in effective prison administration, justifies curtailment of what would otherwise be a constitutionally protected right. Applying

the *Turner* balancing test to the instant action, we find that more factual information is necessary. On a summary judgment motion directed to a pro se complaint the moving party has a particularly heavy burden.

In a single sentence in an affidavit of the Superintendent of Sing Sing it is asserted that "current program priorities and fiscal considerations continue to militate against the establishment of a Family Reunion Program at Sing Sing." *See* Affidavit of John P. Keane at ¶ 3. No further elaboration of this contention is attempted and no facts are presented. This Court is unable to determine whether New York State's regulation or practice is reasonably related to legitimate penological interests, based on this single sentence.[6]

The defendants have not presented or addressed specifically any of the *Turner* factors in support of this motion for summary judgment. Most importantly defendants have failed to suggest why the government has not considered the availability of "ready alternatives" that have been presented by the plaintiff. For example, if "fiscal constraints" are the primary reason that conjugal visits are not allowed, then there is a question of fact about whether plaintiff has proposed a reasonable alternative. According to plaintiff, there is a Quaker organization that is willing to donate "10 module [sic] trailers from Grace Construction Company" and that a local plumbing and electrical company has agreed to provide technical assistance. *See* plaintiff's memorandum of law in response to defendant's motion for summary judgment.

It is certainly correct that this portion of the *Turner* balancing requirement is not a least restrictive alternative test and it is not necessary for the state to consider and reject every conceivable alternative. *See Turner*, 482 U.S. at 90–91, 107 S.Ct. at 2262–63. Yet, as the *Turner* Court wrote "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights" at minimal cost "to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91, 107 S.Ct. at 2262–63. While this Court makes no judgment about whether reasonable alternatives exist, it would be premature, without a fuller record, to grant defendants' motion for summary judgment.

CONCLUSION

Because dismissal of plaintiff's complaint would be premature in the absence of a record which adequately addresses the question whether defendants' interest in promoting valid penological goals is sufficient to outweigh such rights as plaintiff may have to marital privacy, defendants' motion for summary judgment is denied. To the extent that plaintiff claimed a violation of his procedural due process or equal protection rights under the United States Constitution, these claims are dismissed. The Court refers this case to the Pro Se Clerk for the appointment of counsel for plaintiff. Such counsel is to advise the Court of the status of this case within thirty days after appointment.

SO ORDERED.

---

6. The Superintendent goes on to assert "Inmates at Sing Sing interested in maintaining family ties have been urged to participate in the inmate correspondence, telephone, visitation and Family Works programs." *See* Affidavit of John P. Keane at ¶ 4. We do not believe this encouragement of "family ties" adequately deals with the issues raised in this proceeding.