**Ernest HENRY, Plaintiff,**

v.

**Thomas A. COUGHLIN III, Commissioner of D.O.C.S.; John P. Keane, Superintendent of Sing Sing Prison; Brant L. Kehn, Deputy Superintendent of Sing Sing Prison, Defendants.**

94 Civ. 2605 (DAB).

United States District Court,
S.D. New York.

Sept. 30, 1996.

Ernest Henry, Ossining, New York, pro se.

Dennis C. Vacco, Attorney General of the State of New York (Janine M. Spinnato, Assistant Attorney General, of counsel), New York City, for Defendants.

BATTS, District Judge.

Pursuant to 42 U.S.C. § 1983, the Plaintiff *pro se* prison inmate alleges that correctional officers violated his First and Fourteenth Amendment rights when they refused Plaintiff's request for additional visitation privileges.[1] Defendants now move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff responds with a request for leave to amend his Complaint.

## I. BACKGROUND

Plaintiff Ernest Henry is an inmate at Sing Sing Correctional Facility ("Sing Sing") in New York. Defendant Thomas A. Coughlin is Commissioner of the New York State Department of Correctional Services, Defendant John P. Keane ("Keane") is Superintendent of Sing Sing Correctional Facility, and Defendant Brant L. Kehn ("Kehn") is Deputy Superintendent of Sing Sing.

Plaintiff claims that the Defendants violated his First and Fourteenth Amendment rights. Specifically, Plaintiff claims the Defendants instituted an "invisible" policy which prohibits inmates from having additional visits on the same day as their participation in the Family Reunion Program ("FRP") ends. (Compl. ¶ 4.) The FRP allows inmates and their family members to visit for prolonged

---

1. Plaintiff purports to sue on behalf of himself, his wife, and all other similarly situated persons.

(Compl. ¶ 4.)

periods of time in the privacy of an individual trailer or similar unit.[2]

On November 5, 1993, the Plaintiff challenged the legitimacy of this "invisible" policy by filing an internal grievance with the Inmate Grievance Resolution Committee ("I.G.R.C."). (Compl. ¶ 6.) Inmate Grievance Sergeant Whisnant filed a report stating that the issue had been grieved in the past, denied by Keane, and the denial approved by the Central Office Review Committee. (Compl. ¶ 7.)

On November 11, 1993, the I.G.R.C. held a hearing regarding Plaintiff's request and rendered a split decision. (Compl. ¶ 10 & Ex. C.) Next, Plaintiff appealed the I.G.R.C.'s decision to Keane. (Compl. ¶ 10.) In a letter dated November 30, 1993, Keane denied Plaintiff's grievance and cited the prior decision on the same issue. (Compl. ¶ 12.) Keane also informed Plaintiff that the FRP would be changed to specify that no visitation would be permitted at the conclusion of the FRP visit. (Compl. ¶ 12.) On December 2, Plaintiff appealed Keane's decision to the Central Office Review Committee. (Compl. ¶ 14.)

Meanwhile, on November 24, 1993, Henry allegedly wrote to the designated official in charge of the visiting room, Sergeant Mack ("Mack"), and requested a special additional visit on the same day his FRP ended. (Compl. ¶ 11 & Ex. D.) Mack never responded to Henry's letter, and asserts that he never received it. (Compl. ¶ 12; Answer ¶ 11.) On December 14, 1993, Plaintiff requested permission for a special visit from Keane, and included the original letter sent to Mack. (Compl. ¶ 15.) In a memo dated December 20, 1993, Keane denied Henry's request and explained that the visiting room would be especially full because it was a holiday weekend. (Compl. ¶ 16.)

Henry claims that Defendants' actions in denying him the additional visit denied him of his First Amendment right to freedom of association and his Fourteenth Amendment liberty interest to receive visits. (Compl. ¶ 19.) Accordingly, Plaintiff is suing Defendants in their individual and official capaci-

ties. Henry seeks declaratory and injunctive relief, as well as $20,000.00 from each Defendant for compensatory damages.

Defendants move to dismiss the Complaint contending that Plaintiff's allegations fail to state a claim under § 1983. Defendants also maintain that the Eleventh Amendment bars this action and that they are entitled to qualified immunity.

In response to Defendants' motion to dismiss, Plaintiff seeks leave to amend the Complaint. Defendants respond that leave to amend should be denied because the proposed amendment fails to state a cause of action.

## II. DISCUSSION

The standard employed for determining whether to grant a motion for judgment on the pleadings is the same as that for dismissing a complaint for failure to state a cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Ad–Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987); *see also Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). When applying this standard, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard,* 18 F.3d at 150. The court should only dismiss a complaint if, after viewing the plaintiff's allegations in this favorable light, " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Furthermore, where a plaintiff acts *pro se,* a court must liberally construe the complaint, and " 'interpret [it] to raise the strongest arguments that [it] suggest[s],' " *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)), thus giving the *pro se* plaintiff even greater latitude than complaints drafted by lawyers. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175–76,

---

**2.** Neither party specifically describes what the FRP involved in this particular case.

66 L.Ed.2d 163 (1980) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *see also Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

However, to state a claim of relief under § 1983, a plaintiff must show that a person acting pursuant to state law, violated the plaintiff's constitutionally protected rights or privileges. *Smith v. O'Connor,* 901 F.Supp. 644, 646 (S.D.N.Y.1995) (citing *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994)). Moreover, the Second Circuit has emphasized that "complaints relying on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). It is in light of these standards that the Court examines the Plaintiff's claims.

### A. First Amendment Claim

 Henry first contends that the limits on visitation rights imposed by the Defendants restricted his freedom of association as protected by the First Amendment. This claim is clearly without merit. Although inmates do not relinquish their constitutional rights when imprisoned, implicit with incarceration is the fact that confinement imposes a limitation on privileges and rights. *See, e.g., Sandin v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125–26, 97 S.Ct. 2532, 2537–38, 53 L.Ed.2d 629 (1977) (holding that one of the more obvious constitutional rights curtailed by confinement is the right to freely associate with those outside the penal institution). An inmate only "retains those First Amendment rights that are not inconsistent with his status as a prisoner." *Smith v. Coughlin,* 748 F.2d 783, 788 (2d Cir.1984).

In *Pell v. Procunier,* 417 U.S. 817, 826, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974), the Supreme Court specifically addressed this First Amendment issue within the prison context and concluded that security consider-ations and administrative difficulties justify limitations on visitation with inmates. The Court further found that "[s]o long as reasonable and effective means of communication remain open," prison officials must receive deference in structuring visitation guidelines. *Id.* (inner quotations omitted); *Jones,* 433 U.S. at 126, 97 S.Ct. at 2538 ("[b]ecause the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators").

The Supreme Court has emphasized that courts must accord great latitude to prison officials regarding the daily operations of prison facilities. *Turner v. Safley,* 482 U.S. 78, 88, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Consequently, the "regulation [in question] is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. at 2261. In this case, Defendants' explanation for denying Plaintiff's request— overcrowding during weekends, especially holiday weekends—is reasonably related to daily institutional operations. This Court will not interfere with the judgment of the prison officials. Furthermore, effective communication remained open. In fact, Henry received greater visitation and communication privileges than the average Sing Sing inmate because he was afforded the opportunity to have a prolonged visit with his wife in the privacy of a modular home.

Accordingly, Henry's First Amendment claim is without substance, thus, Defendants' motion to dismiss is hereby granted.

### B. Fourteenth Amendment Claim

Henry next contends that Defendants have disregarded his protected liberty interest in receiving visits in the prison's visiting room, and have thus violated the Fourteenth Amendment and state policy. Additionally, Plaintiff asserts that Defendants' "no visits" invisible policy is discriminatory against all inmates involved in the extended visit program. (Compl. ¶ 19(B).) Plaintiff's claim fails to state both an equal protection viola-

tion[3] and a violation of the Due Process Clause under § 1983.

■ Protected liberty interests derive either from the Due Process Clause itself or State laws. *Cromwell,* 773 F.Supp. at 610. To establish a claim, a plaintiff must first show that a liberty interest exists. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). The Supreme Court has rejected the argument that inmates have a protected interest in unfettered visitation protected by the Due Process Clause. *Thompson,* 490 U.S. at 460, 109 S.Ct. at 1908; *see also Hernandez,* 18 F.3d at 137.

■ However, a state can create a liberty interest by adopting a regulatory scheme that creates a legitimate expectation in the inmate for a particular right. *Doe v. Coughlin,* 71 N.Y.2d 48, 54–55, 523 N.Y.S.2d 782, 786, 518 N.E.2d 536, 539–40 (N.Y.1987), *cert. denied,* 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). If access to the specific program is based on objective criteria, an expectation may be created; however, if access to the program is based on subjective factors no expectation and hence no right arises. *Id.* at 55, 523 N.Y.S.2d at 787, 518 N.E.2d at 540–41; *Hernandez,* 18 F.3d at 137. Section 301.6(a) of the N.Y.C.R.R. states that "no inmate shall be deprived of the ... visiting privileges available to the general population." This is an objective criteria; hence it appears there is a protected liberty interest in visitation.[4] *Kozlowski v. Coughlin,* 539 F.Supp. 852, 856–57 (S.D.N.Y.1982); *Kozlowski v. Coughlin,* 871 F.2d 241, 242 (2d Cir.1989); *Greenwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 WL 232736 (S.D.N.Y. Apr. 19, 1995); *Windley v. Cuomo,* No. 91 Civ. 3774, 1992 WL 123172 (S.D.N.Y. May 27, 1992). However, the Supreme Court has recently held that although it recognizes that States may create interests protected by the Due Process Clause, these "interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected man-

ner as to give rise to protection by the Due Process Clause its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* — U.S. at —, 115 S.Ct. at 2300; *Samuels v. Mockry,* 77 F.3d 34, 37 (2d Cir.1996).

■ Accordingly, under *Sandin* the Plaintiff fails to allege a cause of action because he has not shown how the denial of the regular visitation changed his sentence or was otherwise atypical. Even before *Sandin,* finding a state-created liberty interest did not preclude reasonable regulation of that interest. *Greenwaldt,* 1995 WL 232736 at *7; *Windley,* 1992 WL 123172. Here, Defendants regulated visitation that occurred after the FRP visitation. The regulation of visitation hours is within the parameters of daily prison operations, and as such, restrictions on visitation do not encroach upon a liberty interest. *Turner,* 482 U.S. at 88, 107 S.Ct. at 2261. Directive 4500 states that visitors will not be permitted in the regular visiting room immediately following a FRP visit, unless permission is obtained in advance. This does not appear to preclude a visit from another individual who did not participate in the FRP visit. Accordingly, Henry cannot establish that the Defendants' policy infringed upon his protected rights because the regulation at issue, reading the Complaint as broadly as possible, cannot be found to exceed the confines of reasonableness. *See Greenwaldt,* 1995 WL 232736 (explaining that the New York State Department of Correctional Services policy to only allow visitation on alternate days of the weekend did not infringe upon inmate's protected interests in visitation); *Windley,* 1992 WL 123172 (holding that elimination of weekday visitation at a prison facility did not exceed the bounds of reasonableness and thus, did not violate inmates' Fourteenth Amendment Due Process rights). Finally, Plaintiff was not denied any visitation. He was permitted to visit with his wife under the FRP.

---

**3.** There is absolutely no basis for an equal protection violation. *See, e.g., Cromwell v. Coughlin,* 773 F.Supp. 606, 608 n. 4 (S.D.N.Y.1991).

**4.** However, there is no state-created liberty interest in conjugal visits. *See, e.g., Doe,* 71 N.Y.2d 48, 523 N.Y.S.2d 782, 518 N.E.2d 536.

Accordingly, Plaintiff's Fourteen Amendment claims are dismissed.

## C. Amending the Complaint

■ Although Rule 15(a) of Federal Rules of Civil Procedure dictates that leave to amend a complaint must be "freely given when justice so requires," and though *pro se* litigants are held to a less onerous standard than are lawyers, *Hernandez*, 18 F.3d at 136, courts should nevertheless deny such leave where amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Smith v. O'Connor*, 901 F.Supp. 644, 650 (S.D.N.Y.1995) (denying leave to amend where the new claim was subject to dismissal pursuant to Fed. R.Civ.P. 12(b)(6)).

■ Here, Henry's proposed amended complaint retains the same allegations as the original and adds an Eighth Amendment claim. Plaintiff asserts that Defendants' refusal to grant his wife a general visit following the FRP visit constitutes "cruel and unusual punishment." (Am.Compl. ¶ 20.) Plaintiff contends that a FRP and a regular visit are two distinct visits and are governed by different policy directives. (Am.Compl. ¶¶ 22–25.) Thus, Plaintiff maintains that Defendants deprived him of his existing rights when they denied his general visit, and that this denial was "cruel and unusual." (Am. Compl. ¶ 37.) Henry argues that Defendants forced his wife to remain in a public area for ten hours prior to her plane's departure, and that this caused him extreme emotional distress. (Am.Compl. ¶ 31.)

It is well established that the Eighth Amendment bars more than physical torture; however, "discomfort compelled by conditions of confinement, without more, does not violate the amendment." *Smith v. Coughlin*, 748 F.2d at 787 (quoting *Jackson v. Meachum*, 699 F.2d 578, 581 (1st Cir.1983)). Moreover, constraints on inmates do not violate the Eighth Amendment unless the conditions of confinement are "totally without penological justification, grossly disproportionate or involve the unnecessary and wanton infliction of pain." *Smith v. Coughlin*, 748 F.2d at 787 (citations omitted).

Defendants' decision to prohibit inmates from having additional visits the same day their FRP visits end has ample penological justification. Defendants' explained to Henry that inmates who participate in FRP have chores to complete immediately following the extended visit, and that the visiting room was full during the relevant time period. Furthermore, Defendant's denial of Henry's request was not issued as punishment. Although Defendants' decision caused Henry and his wife inconvenience, and perhaps disappointment, these discomforts are simply a result of Plaintiff's confinement. Henry's proposed Eighth Amendment claim fails to state a cause of action under § 1983, accordingly amending the Complaint to include an Eighth Amendment claim would be futile. Accordingly, Plaintiff's request for leave to amend is denied.

## III. CONCLUSION

Defendants' motion to dismiss the Complaint is GRANTED.

Plaintiff's motion for leave to amend the Complaint is DENIED.

The Clerk of the Court is directed to dismiss the Complaint.

Pursuant to 28 U.S.C. § 1915(a), any appeal from this Order would not be taken in good faith.

SO ORDERED.