UNITED STATES of America, Plaintiff–Appellee,

v.

Raymond C. SCHALLOM, III, Defendant–Appellant.

No. 92–5157.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1993.

Decided April 30, 1993.

Amended by order filed July 9, 1993.

---

Leonard A. Kaplan, Asst. Federal Public Defender, Charleston, WVA, argued (Hunt L. Charach, Federal Public Defender, on brief), for defendant-appellant.

Sanford Benjamin Bryant, Asst. U.S. Atty., Huntington, WVA, argued (Michael W. Carey, U.S. Atty., on brief), for plaintiff-appellee.

Before WILKINSON and HAMILTON, Circuit Judges, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.

## OPINION

**PER CURIAM:**

Raymond C. Schallom, III, appeals various matters relating to his conviction and sentencing for violating the Clean Water Act (the "Act") by discharging pollutants without a permit. Finding no reversible error, we affirm.

### I.

Mr. Schallom was charged in a four-count superceding indictment with unlawful disposal, storage, and transportation of hazardous waste in violation of 42 U.S.C. § 6928(d)(2)(A) and (d)(5) and discharging pollutants without a permit in violation of 33 U.S.C. § 1319(c)(2).

Mr. Schallom was a site superintendent for Gunco, Inc. ("Gunco"), a company under contract with the West Virginia Department of Transportation to perform bridge repairs on the Cottageville bridge spanning Mill Creek in Jackson County. The repairs involved chipping away old, defective concrete from the bridge and driving in metal anchors to support a wire mesh which was attached to the structure to hold new concrete. The principal material used in these repairs was "shotcrete," a combination of sand and cement produced when its dry components are fed into a hopper and driven under pressure through a hose to a nozzle where they are mixed with water, also under pressure. The mixture was then sprayed on the desired surface by the "nozzle man," Mr. Schallom. After application, excess shotcrete in some areas was trimmed off to provide a uniform finish.

The process of applying shotcrete was messy and involved "rebound" (shotcrete bouncing off a surface), overspray, and equipment malfunctions or adjustments requiring diversion of the spray from the surface to be repaired. Testimony at trial tended to show that shotcrete was sprayed into the trees and onto the banks of the creek and that hardened shotcrete trimmed from the bridge as excess was dumped into the water. The evidence further indicated that on at least one occasion Mr. Schallom sprayed tons of shotcrete into the creek while "testing" a hose. Underwater inspection of Mill Creek around the Cottageville bridge revealed large amounts of "punky" material in the creek bed thought to be shotcrete that failed to "set" before the water washed away the cement.

Gunco's compensation under the contract depended in large part on the quantity of shotcrete expended. The United States argued at trial and in this appeal that this arrangement provided Mr. Schallom with an economic incentive to waste shotcrete.

On the count of knowingly discharging pollutants without a permit, the jury was instructed:

> [T]he government has to prove three things to you beyond a reasonable doubt. First, that the defendant did knowingly discharge a pollutant from a point source. Secondly, that the pollutant entered the waters of the United States. Third, the defendant didn't have a permit to discharge the pollutant. A pollutant, under this statute, means any solid waste or chemical waste ... discharged into the waters of the United States. In this context, cement and shotcrete are pollutants within the meaning of this definition.... The term "knowingly" ... means that the defendant acted voluntarily and intentionally and not because of mistake, accident, or other innocent reason. To establish that he knowingly discharged cement or shotcrete, the government has to prove to you beyond a reasonable doubt that the alleged discharges were done for a reason other than an industry-approved standard for the repair of the bridge. If you find that the discharge of cement or shotcrete which did occur was simply incident to approved procedures in repairing a bridge, then you would have to find the defendant not guilty....

Joint Appendix ("J.A.") at 454–455.

Mr. Schallom was convicted on one count of discharging pollutants without a permit and acquitted on the remaining charges.

Post-conviction, the appellant moved for authorization and voucher payment of a transcript of his trial testimony, contending that it was necessary for his contribution to the

presentence report. The district court denied the request as unnecessary.

At sentencing, the district court first set the base offense level at six under U.S.S.G. § 2Q1.3(a). It found that a continuing discharge would result from the effects of high water and continuous stream action on solid material in the creek and from seasonal changes affecting the surrounding trees. As a result, the district court added six levels under § 2Q1.3(b)(1). The offense level was increased by an additional four levels for discharge without a permit under § 2Q1.3(b)(5). The district court denied defense motions for downward departure for acceptance of responsibility and for an imperfect defense.

## II.

■ The appellant's challenges can be grouped into three areas: the sufficiency of the evidence to support conviction, the court's instructions to the jury, and the determination of the sentence. The first can be disposed of without much discussion while the remaining two require more analysis.

■ Mr. Schallom argues briefly that the district court should have granted his motion for judgment of acquittal on grounds of insufficiency of the evidence. A sufficiency of the evidence claim is examined to ascertain whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt after all of the evidence is construed in a light most favorable to the government. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We find that a reasonable jury could have properly returned a guilty verdict based upon the evidence the United States produced at trial.

## III.

■ Mr. Schallom takes issue with the district court's charge to the jury on the grounds that it partially directed the verdict, improperly construed 33 U.S.C. § 1344(f)(1)(B), and did not include a proffered "motive instruction." Jury instructions are examined to determine if they are supported by the evidence and are a correct statement of the law. *United States v. Alkins,* 925 F.2d 541 (2d Cir.1991).

■ The appellant contends that the jury should have determined whether cement and shotcrete are pollutants. In his view, the district court's instruction as a matter of law that both materials were pollutants partially directed the verdict. Alternatively, he suggests that cement and shotcrete are not pollutants because they are not defined as such in the Clean Water Act.

■ The issue of whether any given inquiry is one of law for the court or one of fact for the jury turns upon whether the answer depends upon facts developed at trial. *See United States v. Gould,* 536 F.2d 216 (8th Cir.1976). The determination of whether shotcrete and cement are "pollutants" does not depend upon facts developed at trial. Pollutants as defined in the Act include chemical waste, solid waste, and sand. § 1362(6). There is no dispute that cement is a mixture of a number of materials, including chemicals, that shotcrete is a composition of sand and cement, or that these materials were discharged into water in both liquid and solid form. As a result, it cannot be seriously asserted that discarded wet cement or shotcrete, composed of materials specifically identified as pollutants, including chemicals, is not "chemical waste." Nor can it be argued that dried cement or shotcrete trimmed off the bridge as excess is not solid waste. The introduction of each of these substances into Mill Creek makes them "pollutants" within the meaning of the Act. Indeed, it is difficult to envision a factual situation in which cement and shotcrete would not be pollutants for the purposes of § 1362(6). Consequently, we find that the trial court correctly found as a matter of law that these materials are pollutants.

■ Mr. Schallom next asserts that bridge repair enjoys an absolute exemption from the discharge permit requirements under § 1344(f)(1)(B). In the alternative, he contends that the trial court did not apply the "knowingly" mental state requirement in its instruction on the exception. The United States maintains that § 1344(f)(1)(B) was inapplicable in this case, making any instruc-

tion on the bridge repair defense harmless error benefitting Mr. Schallom.

Examination of the statute and the relevant regulations does not support the applicability of § 1344(f)(1)(B) to the appellant's activities. The Act states:

Except as provided in paragraph (2) of this subsection, the discharge of dredged or fill material—

. . . .

(B) for the purpose of maintenance . . . of currently serviceable structures such as . . . bridge abutments . . .

. . . .

is not prohibited by or otherwise subject to regulation under this section or section 1311(a) or 1342 of this title

. . . .

"Fill material" is not defined by the Act but is the subject of two similar regulatory definitions. The U.S. Army Corps of Engineers uses the term to denote

any material used for the primary purpose of replacing an aquatic area with dry land or of changing the bottom elevation of a waterway . . . [it] does not include any pollutant discharged into water primarily to dispose of waste . . . .

33 C.F.R. § 3232.2(e). Likewise, the Environmental Protection Agency uses "fill material" to mean

any pollutant which replaces portions of the waters of the United States with dry land or which changes the bottom elevation of a water body for any purpose.

40 C.F.R. § 232.2(i).

Mr. Schallom does not argue that shotcrete was discharged into Mill Creek for the purpose of changing the bottom elevation of the waterway or to replace the waters of the United States with dry land. As a result, cement and shotcrete cannot be considered "fill material" for the purposes of bridge maintenance and an instruction on the exception was unwarranted. We find that any error arising from the instruction inured to the benefit of Mr. Schallom and that analysis of the scienter element of the bridge repair instruction is unnecessary.

Mr. Schallom maintains that the jury should have been read its proffered "motive instruction" that "bad motive does not matter where the act done is not a crime." He argues that the instruction was necessary because of the emphasis the government placed on its theory that he had an economic incentive to waste shotcrete. A review of the offense instruction shows that the jury was properly charged on the elements of the offenses, the burden of proof, and the appropriate basis for a conviction. Consequently, a separate "motive instruction" was unnecessary.

## IV.

The appellant raises a number of procedural and substantive issues regarding the calculation of his sentence. Mr. Schallom asserts that the rejection of his request for authorization for payment for a transcript denied him of his rights under Fed.R.Crim.P. 32(a)(1) and that he should have been granted a two-point reduction for acceptance of responsibility. He further contends that district court mistakenly relied upon "misinformation and a misreading of the record," that he was improperly assessed a six-point increase for an ongoing, continuous or repetitive discharge, and that an imperfect defense warranted downward departure. None of these arguments are persuasive.

Fed.R.Crim.P. 32(a)(1) requires the district court to determine if the defendant and his counsel have read the presentence report, allows defense counsel to speak on behalf of the defendant, and dictates that the court ascertain if the defendant wants to make a statement and present any information in mitigation. The gist of Mr. Schallom's Rule 32(a)(1) argument is that denial of the transcript request prevented him from using his trial testimony to demonstrate acceptance of responsibility.

The evidence supporting a finding of acceptance of responsibility is tepid at best. The appellant's sentencing memorandum included a written statement by him captioned "What I did—Why I did it" which reads in effect: "I was convicted so I must have been wrong." At sentencing, defense counsel summarized the appellant's position: "I don't think that there are any fact disputes to resolve. What he is saying is that what he

did is not a crime." J.A. at 513. In light of these statements, we fail to see how production of the transcript would have added anything to the factual inquiry of whether the appellant had acknowledged his guilt and expressed remorse. No prejudice has been identified and we accordingly find no error.

■ Turning to the merits of the district court's refusal to grant credit for acceptance of responsibility, we review the ruling under the clearly erroneous standard. *United States v. Greenwood,* 928 F.2d 645 (4th Cir. 1991). Although the court announced incorrectly at sentencing that a reduction for acceptance of responsibility was committed to its sound discretion, it further stated that its decision was based upon its review of matters presented pretrial, during trial, and post-trial. J.A. at 520–521. As a result, we find that the denial of credit for failure to accept responsibility rested upon a sufficient factual foundation and was not clearly erroneous.

The "misinformation" and "misreading" argument is tied to the contention that the enhancement for an ongoing or continuous discharge was improper. These positions in turn focus on paragraph twelve of the presentence report which states in pertinent part:

> Evidence at trial proved the defendant willfully and deliberately wasted shotcrete by spraying it into Mill Creek and on the banks of the creek as repetitive and routine practice. Evidence also proved the defendant purposefully sprayed excessive amounts of shotcrete onto the bridge knowing the shotcrete would fall into Mill Creek. The defendant also directed employees to remove excessive amounts of shotcrete sprayed on top of the bridge and to dump that shotcrete into the creek.

J.A. at 563.

Mr. Schallom takes issue with the use of the term "excessive" as distinct from "excess," to the passage indicating that he deliberately wasted shotcrete by spraying it into the water, and to the finding of a continuous discharge. He argues that each point is not supported by the record. We find that distinguishing between "excessive" and "excess" is a meaningless exercise in semantics, and

that substantial evidence exists in the record to support the determination Mr. Schallom sprayed shotcrete into the water, the trees, and onto the banks of the creek. We further find that the district court's finding that a continuing discharge will result from the effects of high water, continuous stream flow, and seasonal changes on vegetation is not clearly erroneous.

■ The final assignment of error, the rejection of a reduction based upon an imperfect defense, is similarly unavailing. A trial court's refusal to depart downward is unreviewable. *United States v. Bayerle,* 898 F.2d 28, 30–31 (4th Cir.), *cert. denied,* 498 U.S. 819, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990). An exception to this rule exists when the district court mistakenly believes that it lacks authority to depart. *Id.,* 898 F.2d at 31. Mr. Schallom cannot take advantage of this exception because the district court denied the motion on the grounds that the defense was not borne out at trial, not because it lacked authority. *See* J.A. at 536.

Accordingly, we affirm the appellant's conviction and sentence.

***AFFIRMED.***