Michael and Susan ALTMAN,
Plaintiffs,

v.

TOWN OF AMHERST, NEW YORK, Defendant.

No. 98–CV–237(E).

United States District Court,
W.D. New York.

March 13, 2001.

David J. Seeger, Esq., Buffalo, NY, for Plaintiffs.

Block & Colucci, P.C., John J. Marchese, Esq., Buffalo, NY, Phillip A. Thielman, Esq., Amherst Town Attorney, Williamsville, NY, for Defendant.

## DECISION and ORDER

MAXWELL, United States Magistrate Judge.

### JURISDICTION

By order of the Hon. John T. Elfvin dated September 10, 1998 (Docket # 7) and with the consent of the parties, this matter was referred to the undersigned for disposition of all matters including the entry of judgment pursuant to 28 U.S.C. § 636(c). It is presently before the court on the defendant's motion to dismiss the

complaint or, in the alternative, for summary judgment (Docket # 8).

## BACKGROUND and FACTS

Plaintiffs, residents of the Town of Amherst, New York, commenced this citizen suit with the filing of a complaint on April 8, 1998 (Docket # 1). In it, they allege that the defendant is in violation of the Clean Water Act, 33 U.S.C. § 1251, et seq., for its application of pesticides for mosquito control in wetland areas without a permit issued pursuant to the National Pollutant Discharge Elimination System ("NPDES") or the State Pollution Discharge Elimination System ("SPDES"), 33 U.S.C. § 1342. See Complaint, ¶¶ 19–26. Specifically, the plaintiffs allege that Town's mosquito control program consists of two components—first, the placement of larvacide briquets, which activity is not a subject of this action, and second, the spray application of insecticide at various locations within the Town of Amherst. Complaint, ¶¶ 9–11. The plaintiffs allege that the spray equipment used is a "point source" for purposes of the Clean Water Act, and that the spraying occurs over federal wetlands which constitute navigable waters of the United States. Complaint, ¶¶ 17–21. As such, plaintiffs allege that a NPDES or SPDES permit is required pursuant to the Clean Water Act. 33 U.S.C. § 1342.

In its answer, the defendant denied the allegations of the complaint, and stated that the pesticides used in its mosquito control program do not constitute "pollutants" as defined in the Clean Water Act. Answer (Docket # 5), ¶ 33. It denied that it discharged pesticides into the navigable waters of the United States, and stated that the mosquito control program presents "no actual or potential threat to public health or welfare or to the environment...." Answer, ¶¶ 31, 36.

On August 8, 2000, the defendant filed this Motion to Dismiss or, in the Alternative, for Summary Judgment (Docket # 8) on the ground that the complaint fails to state a claim against the Town of Amherst upon which relief may be granted. It is the defendant's position that no permit is required under the Clean Water Act, and that it possesses the necessary permit for the mosquito spraying program from the New York State Department of Environmental Conservation ("DEC").

In support of the motion, defendant submitted the permit for the Town's mosquito spraying program issued by the DEC. The permit authorizes an annual application of pesticides to control "nuisance and vector mosquitoes" in certain New York State regulated wetlands. The pesticides include methoprene, resmethrin, permethrin and malathion. See Affidavit of Phillip A. Thielman, filed August 8, 2000 (Docket # 10), at Exhibit A. Additionally, the Town submitted a letter from the Army Corps of Engineers in which Philip D. Frapwell, Chief of Monitoring and Enforcement, stated that the Corps, which regulates the discharge of dredged or fill material into the waters of the United States, including wetlands, does not consider the application of pesticides a discharge of dredged or fill material and thus does not require a permit from the Corps. Thielman Affidavit, Exhibit B. The Town also submitted correspondence between it and the Environmental Protection Agency ("EPA") in which Kathleen C. Callahan, Regional Director of Environmental Planning and Protection, stated that the EPA has "no specific policy under the NPDES program on the spraying of pesticides to control mosquitos where the pesticide is discharged directly to waters of the United States." Thielman Affidavit, Exhibit D. Additionally, Ms. Callahan stated that the EPA Region 2 "has not issued NPDES permits for such activities in the past, nor has Region

2 sought to compel New York to do so." Thielman Affidavit, Exhibit D. Finally, Ms. Callahan stated that the EPA "defer[s] to the State to make the determination of whether a permit should be required for such activities." Additionally, Deputy Town Attorney E. Thomas Jones averred that he spoke with Regional Water Engineer Richard Swiniuch of the DEC regarding the permit requirements for the Town of Amherst mosquito spraying program. Mr. Swiniuch stated that the DEC has never issued a separate permit under the NPDES, and that any such permit would be unnecessary and duplicative of the permit already issued to the Town of Amherst by the DEC. Affidavit of E. Thomas Jones, filed August 8, 2000 (Docket # 9).

The plaintiffs filed their response to the Motion on September 8, 2000 (Docket ## 13, 14). In their Memorandum of Law, plaintiffs contend that the defendant's annual mosquito control program, by which it administers insecticides on federally controlled wetlands, is in violation of the Clean Water Act. They insist that defendant does not have the proper permit for this activity under NPDES/SPDES. Finally, plaintiffs contend that summary judgment should not be granted as discovery is ongoing.

Oral argument was heard on September 14, 2000. At that time, the court allowed additional submissions. On September 29, 2000, the defendant filed an additional Attorney's Affidavit and a Memorandum of Law in which it reiterated its position that the Town of Amherst is not required to obtain a permit, other than the permit it already possesses from the DEC, for the administration of its mosquito control program. Affidavit of Phillip A. Thielman, filed September 29, 2000 (Docket # 16). The defendant also submitted a Declaratory Ruling of the Commissioner of the DEC in a matter involving the application of pesticides in streams near Cayuga and Seneca Lakes to control the population of lamprey eels. In *Matter of Booth,* Declaratory Ruling 24–07 (N.Y. Dep't of Environmental Conservation, September 23, 1983), the Commissioner determined that a SPDES permit was not required for such activity.

On September 29, 2000, the plaintiffs also filed a Supplemental Memorandum of Law and an Attorney's Affirmation in opposition to the motion. They continued to argue that a NPDES/SPDES permit is required for the discharge of pesticides into wetlands. Additionally, they argue that the motion for summary judgment is not supported by admissible evidence as the letters and affidavits offered in support of the motion contain inadmissible hearsay.

For the reasons that follow, the Motion to Dismiss or for Summary Judgment is GRANTED.

## *DISCUSSION*

### 1. *Motion to Dismiss*

■ The defendant's Motion is framed as one to dismiss the complaint or, in the alternative, for summary judgment. Turning first to the defendant's motion to dismiss, the court must consider the allegations of the complaint and, accepting them as true, decide whether the plaintiffs can prove any set of facts which would entitle them to relief. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). The Clean Water Act prohibits the (1) discharge (2) of a pollutant (3) from a point source (4) into the waters of the United States. 33 U.S.C. § 1311(a); *No Spray Coalition v. City of New York,* 2000 WL 1401458 (S.D.N.Y.). Here, plaintiffs have alleged that the Town of Amherst has discharged pollutants from a point source in the form of insecticides from spray

mechanisms. Assuming that the application of pesticides constitutes a "discharge" from a "point source," the question remains whether the pesticides, as used in the manner for which they were intended, constitute "pollutants" for purposes of the Clean Water Act.

"Pollutant" is defined in the Clean Water Act. as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste, discharged into water." 33 U.S.C. § 1362(6). Courts have examined discharges into waterways and have rejected the argument that a substance is not a pollutant if had a beneficial purpose at one time. *See United States v. Schallom,* 998 F.2d 196 (4th Cir.), *cert. denied,* 510 U.S. 902, 114 S.Ct. 277, 126 L.Ed.2d 228 (1993) (discharge of shotcrete to repair bridge violated Clean Water Act); *Hudson River Fishermen's Assoc. v. City of New York,* 751 F.Supp. 1088, 1101 (S.D.N.Y.1990), *aff'd* 940 F.2d 649 (2d Cir. 1991) (discharge of alum and floc from water filtration system required SPDES permit). Whether spray drift from a pesticide used for its intended purpose is a chemical waste within the meaning of the Clean Water Act appears to be a question of first impression. *See No Spray Coalition, Inc., supra,* at *3, n. 2.

The court's research has uncovered no reported cases in which the use of pesticides, in the manner for which they were intended, were found to be "pollutants" requiring a NPDES or SPDES permit under the Clean Water Act. In *Matter of Booth,* a Declaratory Ruling of the DEC, the Deputy Commissioner found that the application of pesticide to control the sea lamprey population did not constitute the discharge of a chemical waste product.

Rather, the pesticides were "commercially obtained chemical products being deliberately and carefully applied to stream bottoms for purposes of an experimental program to destroy an aquatic pest." *Matter of Booth,* at 27. The Deputy Commissioner also noted that pesticides have only been considered chemical wastes when they are the byproducts of a manufacturing process, not intentionally discharged into waters for pest control purposes. *See United States v. Velsicol Chemical Corp.,* 438 F.Supp. 945 (W.D.Tenn.1976).

Additionally, in *No Spray Coalition, supra,* the court recognized that the statute that most clearly applies to a municipal insecticide spraying program is the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136–136(y) which provides no private right of action. Under the regulatory scheme of FIFRA, a pesticide can only be registered for use if it is determined that it will perform its intended function without unreasonable adverse effects on the environment and, when used in accordance with widespread and commonly recognized practice, it will not generally cause unreasonable adverse effects on the environment. 7 U.S.C. § 136a(5). The court in *No Spray Coalition, supra,* found that "so long as the use is within the category of uses for which the EPA has approved the pesticide, Congress intended to leave it to the EPA and the Attorney General to determine whether there has been compliance with the technical requirements of the label." *No Spray Coalition, Inc. v. City of New York, supra,* at *3. Here, there is no allegation that the pesticides used in the Town spraying program are used other than in the manner for which they are intended and as approved by the EPA.

In reliance on the DEC's interpretation of the applicable statute, and recognizing that the EPA has deferred to the state to

issue the appropriate permit for the mosquito spraying program, the court concludes that pesticides, when used for their intended purpose, do not constitute a "pollutant" for purposes of the Clean Water Act, and are more appropriately regulated under FIFRA. Accordingly, the complaint fails to state a cause of action under the Clean Water Act, and must be dismissed.

### 2. *Motion for Summary Judgment*

■ Defendant's Motion for Summary Judgment turns on whether the Town of Amherst has a sufficient permit for the mosquito spraying program. Plaintiff contends that the Freshwater Wetlands permit issued by the DEC is insufficient, and that the spraying program required a NPDES/SPDES permit pursuant to the Clean Water Act. The defendant contends that, as the DEC has authorized the Town of Amherst mosquito spraying program under the New York Environmental Conservation Law, an additional NPDES/SPDES permit would be duplicative and unnecessary.

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when, viewing the evidence in the light most favorable to the non-moving party, the court determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). If the moving party sustains its burden of establishing the nonexistence of a genuine issue of material fact, the bur-

den shifts to the adverse party to demonstrate the existence of a genuine issue for trial. *Anderson, supra,* at 250, 106 S.Ct. 2505. To show a genuine dispute, the non-moving party must set forth specific facts supporting the allegations of his pleadings such that a rational trier of fact could find in his favor. *Anderson, supra,* at 248, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra,* at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra,* at 255, 106 S.Ct. 2505; *Rattner, supra,* at 209.

In support of its motion, the defendant offered letters from the EPA and the Army Corps of Engineers, both to the effect that those agencies do not have jurisdiction over the mosquito spraying program and deferring to the DEC.[1] Additionally, Kathleen Callahan, Director of Environmental Planning and Protection for the EPA Region 2, stated that the EPA does not issue NPDES permits for the spraying of pesticides to control mosquitos, and has not compelled New York State to do so.[2] The court concludes that, as the EPA does not require a NPDES permit for the approved use of pesticides and defers the administration of the NPDES/SPDES program to the DEC,

---

1. The court notes that these letters, introduced in the attorneys's affidavit, are admissible public records.

2. The court in *No Spray Coalition, supra,* also recognized that it is the position of the EPA

that the use of pesticides for approved purposes does not require a permit under the Clean Water Act. *No Spray Coalition, Inc. v. City of New York, supra,* *2, n. 1.

and the DEC does not require a SPDES permit for the same activity, then no further permit is required under any administrative scheme. As the Town of Amherst spraying program is permitted by the DEC and no other permit is required, the Motion for Summary Judgment is GRANTED, and the complaint is dismissed.

### CONCLUSION

Based on the foregoing, the defendant's Motion to Dismiss or, in the alternative, for Summary Judgment is GRANTED.

SO ORDERED.