**Michael ALTMAN and Susan Altman,**
**Plaintiff–Appellant,**

v.

**TOWN OF AMHERST, N.Y.,**
**Defendant–Appellee.**

**Docket No. 01–7468.**

United States Court of Appeals,
Second Circuit.

Sept. 26, 2002.

David J. Seeger, Buffalo, NY, for Appellant.

John J. Marchese, Colucci & Gallaher, P.C., Buffalo, NY, for Appellee.

Paul S. Weiland, Environmental & Natural Resources Division, United States Department of Justice, Washington, DC; Jeffrey Bossert Clark, Deputy Assistant Attorney General; and Thomas L. Sansonetti, Assistant Attorney General, on the brief, for United States, Amicus Curiae.

Present CALABRESI and CABRANES, Circuit Judges, and AMON,* District Judge.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the

---

* The Honorable Carol Bagley Amon, of the United States District Court for the Eastern District of New York, sitting by designation.

District Court dismissing the complaint be and hereby is **VACATED** and the cause is **REMANDED** with instructions for further proceedings consistent with this order.

Plaintiffs appeal from a judgment entered on March 15, 2001 for the Town of Amherst, New York (hereinafter "defendant" or "Town"). The District Court granted defendant's motion to dismiss[1] plaintiffs' claims under the Clean Water Act, 33 U.S.C. §§ 1251, et seq. ("CWA"), concluding that no issue of material fact exists, and "that pesticides, when used for their intended purpose, do not constitute a 'pollutant' for purposes of the ... [CWA,] and are more appropriately regulated under [the Federal Insecticide, Fungicide and Rodenticide Act]." *Altman,* 190 F.Supp.2d at 471. The case raises a number of significant issues of first impression in this Court.

### A.

Unless otherwise indicated, the following facts are not disputed. Plaintiffs, residents of the Town, commenced the instant suit on April 8, 1998, seeking declaratory and injunctive relief, civil penalties and attorney's fees for alleged violations of the CWA permit requirements from 1995 through the pendency of the action. They alleged that defendant violated the CWA by applying pesticides for mosquito control in federal wetland areas without a permit issued pursuant to the National Pollutant Discharge Elimination System ("NPDES") or the State Pollution Discharge Elimination System ("SPDES"). Complaint, ¶¶ 19–26; and *see* 33 U.S.C. § 1342.

Plaintiffs alleged that an NPDES/SPDES permit was required under the CWA because the pesticides constitute pollutants discharged from a "point source" directly into waters of the United States, in violation of 33 U.S.C. §§ 1311(a) and 1342. Plaintiffs also alleged that the pesticides in question (including malathion, resmethrin, and permethrin) were "pollutants" directly discharged by aerial spray application on and over federal freshwater wetlands (constituting "waters of the United States") in violation of the CWA. Complaint, ¶¶ 9–11; 22–23. The spray equipment used is allegedly a "point source" under the CWA. Complaint, ¶¶ 17–21.

The parties participated in settlement discussions between August 1998 and June 2000, and a complete settlement proposal received the endorsement of plaintiffs' and defendant's counsel. However, defendant's Town Board elected not to enter into the negotiated settlement agreement.

On August 8, 2000, defendant filed a motion to dismiss, or in the alternative, for summary judgment, arguing that it is not required to obtain a permit other than the freshwater wetlands permit issued by the DEC. In an affidavit accompanying the motion, defendant submitted a copy of a formal position letter from the Army Corps of Engineers stating that an "Army Permit is not required for application of these activities." Letter from Frapwell, Army Corps of Engineers, to Town Supervisor Grelick of 6/15/00. The affidavit also referred to an Environmental Protection Agency ("EPA") letter dated July 21, 2000, prepared for this litigation, stating that the EPA "[h]ad no specific policy under the NPDES Program on the spraying of pesticides to control mosquitoes where pesticide is discharged directly into the waters

---

1. The District Court also, apparently in the alternative, granted defendant's motion for summary judgment on the ground that the freshwater permit given by the New York State Department of Environmental Conservation ("DEC") for the Town's mosquito spraying program was the only permit required. *See Altman v. Town of Amherst, N.Y.,* 190 F.Supp.2d 467, 471 (W.D.N.Y.2001).

of the United States" Letter from Callahan to Thielman of 7/21/00 at 1;[2] the EPA letter also stated that the EPA "[h]as never issued an NPDES Permit for such activities in the past, nor has it sought to compel New York to do so." *Id.* The EPA referred all further inquiries to the DEC. These statements or representations are not disputed by plaintiffs.

In an affidavit dated September 25, 2000, defendant also alleged that the DEC "has already issued the Town a permit and does not issue duplicate permits under its aforesaid delegated [CWA] authority." Thielman Aff. of 9/25/00, ¶ 5 at 2. In its September 27, 2000 memorandum in support of its motions, defendant asserted that "the EPA does not issue NPDES permits for such activities nor has it sought to compel the State of New York to issue such permits under the SPDES permit program." Def.'s Mem. Supp. Summ. J. at 3. Defendant relied on *Matter of Booth,* Declaratory Ruling 24–07 (N.Y. Dep't of Env'tl Conserv., September 23, 1983) ("*Matter of Booth*"), to support its position that "w[h]ere pesticides are intentionally deposited into water including Fresh Water Wetlands to eradicate undesirable organisms there is no legal requirement to seek a SPDES permit." *Id.*

In a responsive affirmation, dated September 8, 2000, plaintiffs complained that they had not received any responses to their interrogatories, nor been afforded the opportunity to take depositions. Plaintiffs asserted that they had requested discovery and served subpoenas, dated August 4, 1998, on six employees of the Town. Plaintiffs' first set of interrogatories were dated June 20, 2000. In a letter to defendant's counsel, dated June 19, 2000, after settlement negotiations failed, plaintiffs reiterated that the subpoenas were outstanding, gave dates for when plaintiffs' counsel was available to conduct depositions and requested production of documents responsive to the first set of interrogatories prior to the depositions. Plaintiffs' affirmation of September 8, 2000, stated that they "have received not one jot of information or evidence in response to their discovery demands." Seeger Aff. of 9/08/00, at 3.

In this last affirmation plaintiffs claimed that the pesticides were pollutants under state and federal law requiring an SPDES permit, drawing to the Court's attention the DEC freshwater wetlands permit obtained by the Town, which included the clause, "[t]he permittee is responsible for obtaining any other permits ... that may be required for this project." Seeger Aff., of 9/29/00, at 5. In the accompanying supplemental memorandum of law in opposition to defendant's motion of the same date, plaintiffs argued that New York State Conservation Law § 17–0803 requires an SPDES permit if pollutants are to be discharged into the waters of the state from a point source. Plaintiffs argued also that the freshwater wetlands permit was neither sufficient nor duplicative of an SPDES permit. They challenged defendant's position that pesticides discharged for a beneficial, useful purpose are not pollutants, citing rejection of this theory for other discharges. Among the cases on which plaintiffs relied were *Hudson River Fishermen's Ass'n v. City of New York,* 751 F.Supp. 1088 (S.D.N.Y. 1990) (holding CWA violated by discharge of chlorine and alum floc for water purification purposes), *aff'd without opinion,*

---

2. The amicus curiae brief of the United States asserts that the "EPA has not developed a comprehensive position on ... whether and under what circumstances it is necessary to obtain an NPDES permit to apply pesticides in, on, or over navigable waters." Amicus Curiae Brief of the United States at 6.

940 F.2d 649 (2d Cir.1991); *United States v. Schallom*, 998 F.2d 196 (4th Cir.1993) (holding shotcrete discharged to repair a bridge was a pollutant under the CWA); *see also Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526 (9th Cir.2001) (holding an aquatic herbicide created a residual chemical waste pollutant under the CWA). Finally, plaintiffs argued "that the application of pesticides within 'federal wetlands' is subject to the NPDES/SPDES permit requirement of § 402 of the Clean Water Act (33 USC § 1342) and is not subject to the discharge-of-fill-or-dredged-material permit requirement of § 404 of the Clean Water Act (33 USC § 1344)." Seeger Aff., of 9/29/00, at 7.

In letter briefs dated February 22, 2001, in response to the Court's request, the parties commented on *No Spray Coalition v. City of New York*, 2000 WL 1401458 (S.D.N.Y.) (holding that *de minimis* pesticide spray drift was not a pollutant under the CWA).

In a Decision and Order of March 13, 2001, the District Court granted defendant's motion to dismiss and, apparently in the alternative, its motion for summary judgment. The District Court held that "spray drift from a pesticide used for its intended purpose is [not] a chemical waste within the meaning of the Clean Water Act...." *Altman*, 190 F.Supp.2d at 470. The Court also concluded that the defendant's pesticide program is "more appropriately regulated under FIFRA." *Id.* at 471. Finally, the Court held that because the Town's spraying program is permitted by the DEC and no other permit is required, the plaintiffs' claims under the CWA were without merit. *Id.* at 472.

### a. Motion to Dismiss

In granting the motion to dismiss, the District Court relied upon the DEC's ruling in *Matter of Booth*, Declaratory Ruling 24–07 (N.Y. Dep't of Env'tl Conserv., September 23, 1983); the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136–136(y), labels for the pesticides; and, FIFRA itself, which the Court held was the more appropriate statute for evaluations of pesticides. *Altman*, 190 F.Supp.2d at 470. The District Court held that no federal permit was required under the CWA and that the Town had obtained the necessary permit for the mosquito spraying program from the DEC, stating that its research "has uncovered no reported cases in which the use of pesticides, in the manner for which they were intended, were found to be 'pollutants' requiring a NPDES or SPDES permit under the Clean Water Act." *Id.*

Although the District Court noted in passing that "[c]ourts have examined discharges into waterways and have rejected the argument that a substance is not a pollutant if [it] had a beneficial purpose at one time," *id.* at 470, it found persuasive the DEC ruling in *Matter of Booth* that a properly used pesticide was not a "pollutant" within the meaning of the CWA. It relied on *No Spray Coalition* for the proposition "that the statute that most clearly applies to a municipal insecticide spraying program is the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136–136(y)[,] which provides no private right of action." *Altman*, 190 F.Supp.2d at 470. The District Court went on to state that "there is no allegation that the pesticides used in the Town spraying program are used other than in the manner for which they are intended and as approved by the EPA [under the FIFRA labeling scheme]." *Id.*

The Court therefore dismissed the complaint, holding that "pesticides, when used for their intended purpose, do not constitute a 'pollutant' for purposes of the Clean Water Act, and are more appropriately

regulated under FIFRA." *Altman,* 190 F.Supp.2d at 471.

### b. Motion for Summary Judgment

In granting defendant's motion for summary judgment, the Court relied on defendant's letters from the EPA and the Army Corps of Engineers, concluding that only the DEC had jurisdiction over the mosquito spraying program: "as the EPA does not require a NPDES permit for the approved use of pesticides and defers the administration of the NPDES/SPDES program to the DEC, and the DEC does not require a SPDES permit for the same activity, then no further permit is required under any administrative scheme." *Altman,* 190 F.Supp.2d at 471–72.

The District Court relied also on a June 15, 2000 letter from the Army Corps of Engineers stating that the "application of pesticides, in any form, does *not* constitute a discharge of dredged or fill material, and so is not within the jurisdiction of the Corps of Engineers." Letter from Frapwell, Army Corps of Engineers, to Town Supervisor Grelick of 6/15/00 (emphasis in original). The letter asserted that a "Department of the Army permit is not required for application of these activities" and that "[t]he New York Department of Environmental Conservation and/or local government agencies may have regulations governing the use of pesticides." *Id.*

This timely appeal followed.

### B.

On appeal, plaintiffs raise three issues. First, they contend that FIFRA, does not "preempt" or supersede or foreclose permit requirements under § 402 of the Clean Water Act. *See* 33 U.S.C. §§ 1251 et seq.; 1342. Second, plaintiffs object that federal and state agency acquiescence to the Town's discharges without a permit under Section 402 of the CWA is unlawful.

Third, they claim that defendant's deliberate, good faith application of pesticides for their intended use does not render them something other than a "pollutant" within the meaning of the Clean Water Act.

Our review of the record persuades us that the District Court acted on the basis of an incomplete record, having unnecessarily curtailed or foreclosed the discovery sought by plaintiffs, and having failed to consider a number of threshold questions of law. We therefore vacate the judgment and remand with directions that the Court afford plaintiffs a reasonable opportunity to undertake discovery with respects to their claims, *inter alia,* that defendant has sprayed pesticides from truck-loaded spray equipment as part of its mosquito control program; that it sprays these pesticides into "waters of the United States," *see* 33 U.S.C. § 1362(7), within the Town; that these sprays or discharges of pesticide are from a so-called point source into the wetlands; and that these pesticides, if and when applied to such wetlands, are pollutants subject to federal permit requirements. At a minimum, plaintiffs should be allowed to obtain the discovery they sought at the time the original dispositive motions were filed (*see* Pls. Mem. of Law in Opp'n to Town's Mot. for J. on the Pleadings and Summ. J. of 9/08/00, at 1), and the sort of detailed information that the United States, in the amicus brief submitted to us, suggests is relevant to our inquiry. Amicus Curiae Brief of the United States at 15–18. After the completion of this discovery, and such further discovery by the parties as the District Court may deem appropriate, the Court shall consider such dispositive motions as the parties may choose to file.

In light of the ambiguous stance of the United States with respect to the role and policies of the EPA regarding circumstances such as those asserted in the com-

plaint herein, *see* Amicus Curiae Brief of the United States at 4–6, plaintiffs shall be afforded an opportunity to move to amend their complaint to seek such joinder of state or federal agencies as may be permissible or appropriate, *see, e.g.,* 33 U.S.C. § 1365(a), to effectuate the relief sought.

Until the EPA articulates a clear interpretation of current law—among other things, whether properly used pesticides released into or over waters of the United States can trigger the requirement for NPDES permits (i.e., an SPDES permit in Amherst)—the question of whether properly used pesticides can become pollutants that violate the CWA will remain open. Participation by the EPA in this litigation in any way that permits articulation of the EPA's interpretation of the law in this situation would be of great assistance to the courts.

On remand the District Court will have an opportunity to initially consider a number of important questions that have arisen in the course of the appeal as well as others that previously were not fully explored by the Court, including without limitation: (1) whether the freshwater wetlands within New York were "waters of the United States" within the meaning of the CWA, *see Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers, et al.,* 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001); (2) whether the spraying, application, or discharge of the pesticides at issue here (including resmethrin, malathion, and permethrin) constituted the *deliberate discharge* of "pollutants" into waters of the United States from a point source under the CWA, requiring an SPDES permit prior to spraying, application, or discharge, in light of the amicus curiae brief submit-

ted by the United States (including the four considerations for determining if a pesticide is a chemical waste, Amicus Brief of the United States, pp. 14–17)[3] and the Ninth Circuit's analysis in *Headwaters, Inc.,* 243 F.3d 526; (3) whether the pesticides used by the town were *properly* used for their intended purpose; (4) whether any of the particular pesticides sprayed, applied or discharged by the Town (*see* Complaint, ¶¶ 11, 15, 16, and 19; Freshwater Wetlands Permit of 5/02/95 at Description of Authorized Activity, at 2, ¶¶ 8, 11, 16, and at 3, ¶ 5 of the Special Conditions; Draft Supplemental Generic Environmental Impact Statement for Town at 1–14, ¶ 1.6.5, App. C at C–11 and C–17) are, in the circumstances presented, "pollutants" under the CWA; and (5) the persuasive authority *vel non* of recent case law, including *Headwaters, Inc. v. Talent Irrigation Dist.,* 243 F.3d at 531, as well as the significance of our own assertedly relevant precedents, *see, e.g., Connecticut Coastal Fishermen's Assoc. v. Remington Arms Co.,* 989 F.2d 1305, 1316 (2d Cir.1993), and those of the Supreme Court, *see, e.g., Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 612, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991).

We emphasize that, in vacating the judgment and remanding this cause to the District Court and directing that it consider these questions, we intimate no view whatsoever with respect to their resolution in the District Court or with respect to that Court's final judgment.

## CONCLUSION

For the reasons set forth above, the District Court's order of summary judg-

---

**3.** We note that in *Catskill Mountains Chapter of Trout Unltd., Inc. v. City of New York,* 273 F.3d 481, 490 (2d Cir.2001), we held that

administrative decisions prepared for litigation are not subject to *Chevron* deference, but should be followed to the extent persuasive.

ment and dismissal with prejudice is hereby **VACATED** and the case is **REMAND-** **ED** for further proceedings consistent with this order.