**Brian SHEPPARD, Plaintiff–Appellant,**

v.

**Leon BEERMAN, as an individual and in his official capacity as Justice of the Supreme Court of the State of New York, Defendant–Appellee.**

No. 536, Docket 93–7658.

United States Court of Appeals, Second Circuit.

Argued Nov. 2, 1993.

Decided March 3, 1994.

Brian Sheppard, pro se.

John J. Sullivan, Assistant Attorney General of the State of New York, New York, N.Y. (Robert Abrams, Attorney General of the State of New York, Albany, N.Y., of counsel), for Defendant–Appellee.

Before: OAKES, KEARSE, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant Brian Sheppard, appearing *pro se*, appeals from a judgment of the United States District Court for the Eastern District of New York (Glasser, *J.*), dismissing his complaint on the pleadings pursuant to Fed.R.Civ.P. 12(c) ("Rule 12(c)"), 822 F.Supp. 931. Sheppard, a law clerk to defendant-appellee Leon Beerman, a justice of the Supreme Court of the State of New York, was discharged following a heated dispute with Beerman. Sheppard subsequently brought an action under 42 U.S.C. § 1983 (1988) alleging that his discharge and Beerman's conduct following the discharge violated his First and Fourth Amendment rights. In his complaint, Sheppard claimed that he was fired in "retaliation for [his] protesting, and [sic] considering to expose, judicial misconduct." He further alleged that subsequent to the discharge, Beerman illegally searched his office and seized his belongings. The district court dismissed Sheppard's claims on the pleadings, finding that he failed to state any cognizable constitutional claims. On appeal, Sheppard challenges the dismissal of each of his claims, generally arguing that the district court made certain improper factual findings in ruling on Beerman's Rule 12(c) motion to dismiss on the pleadings. For the reasons discussed below, we agree with Sheppard only as to one of his First Amendment claims. Accordingly, we affirm, in part, and vacate and remand, in part.

## BACKGROUND

Sheppard served as a law clerk to Beerman from 1986 until he was fired on December 11, 1990. Because this case comes to us on a motion to dismiss, we must view the facts in the light most favorable to Sheppard. Accordingly, his view of the facts alleges the following series of events preceding and following his discharge.

Sheppard alleges that on December 6, 1990, after engaging in *ex parte* communications with the prosecution in a pending murder case, Beerman ordered him to draft a decision denying the defendant's pending speedy trial motion without a hearing, regardless of the motion's merits, so that the defendant would stand trial at a time advantageous to the prosecution. Sheppard refused to follow Beerman's direction, stating that he would not take part in the "railroading" of the defendant. Beerman responded that although Sheppard was not being discharged, he should seek other employment if he felt that way.

At this time, Sheppard informed Beerman that he had taken extensive notes of instances of other judicial misconduct by Beerman during the preceding four years of Sheppard's service in chambers. As an example, Sheppard noted a case that Beerman had assigned to himself in order to take personal revenge against the accused. Beerman expressed concern about Sheppard making his notes public. Harsh words were exchanged

between the parties: Sheppard called Beerman "corrupt" and a "son of a bitch," and Beerman called Sheppard "disturbed" and "disloyal." Sheppard immediately apologized for his characterization. The argument ended with no resolution, and Sheppard worked the remainder of the day.

When Sheppard next returned to work on December 11, 1990, he was removed from chambers by court officers, who informed him that Beerman had fired him. Sheppard was forced to leave immediately and not allowed to take his belongings with him. Both before and after his discharge on that day, Sheppard's property was searched by Beerman or by others at his direction. Specifically, Sheppard's file cabinets and desk drawers were searched, and a box of his personal file cards was seized and removed to Beerman's private office and examined. On December 13, 1990, Sheppard was permitted to return to chambers accompanied by court officers to retrieve certain of his belongings. On December 21, 1990, he was permitted to retrieve the rest of his personal files.

Following his discharge, Sheppard returned to Beerman's courtroom on a number of occasions. On January 18, 1991, while attending Beerman's calendar call, Sheppard began ruffling through court files. Beerman subsequently directed him to leave the courtroom if he wished to examine documents. On January 28, 1991, Beerman told an attorney not to speak with Sheppard and warned Sheppard not to involve himself in the cases Sheppard had worked on when he was a clerk. On February 11, 1991, Sheppard was told not to keep coming in and out of the courtroom, and was told to be quiet when he sought to reply to this direction.

*Sheppard's Lawsuit*

In April 1991, Sheppard commenced an action under 42 U.S.C. § 1983, alleging that the above actions by Beerman violated Sheppard's First Amendment right to free speech, his First Amendment right of access to criminal proceedings and documents, his First Amendment right to petition the government for redress of grievances, and his Fourth Amendment right to be free from unlawful searches and seizures. Sheppard also asserted pendent state law tort claims for,

among other things, false imprisonment, trespass, conversion, and defamation. Beerman filed an answer and then moved for judgment on the pleadings pursuant to Rule 12(c) on the grounds that Sheppard had not met threshold pleading requirements, that the complaint failed to state a cause of action, and that Beerman was entitled to qualified immunity.

On May 21, 1993, the United States District Court for the Eastern District of New York (Glasser, *J.*) granted Beerman's motion for judgment on the pleadings on the grounds that Sheppard could not state any cognizable constitutional claim under any set of facts as a matter of law. Having held that plaintiff failed to state any cognizable constitutional claims, the court declined to exercise its pendent jurisdiction over plaintiff's state law claims.

Sheppard now appeals.

### DISCUSSION

We review the district court's grant of Beerman's motion to dismiss Sheppard's claims *de novo.* See *Grimes v. Ohio Edison Co.,* 992 F.2d 455, 456 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993). In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6). *See Ad–Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987). Under that test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). This standard is "applied with particular strictness when the plaintiff complains of a civil rights violation." *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991) (citations omitted).

On appeal, Sheppard generally contends that the district court erred in finding that he had not stated cognizable constitutional

claims. Each of Sheppard's First and Fourth Amendment claims will be discussed in turn.

### I. *First Amendment Claims*

#### a. *Free speech claims*

Sheppard first contends that the district court made improper factual findings in dismissing his claim that his discharge amounted to a violation of his First Amendment right to free speech. We agree, and for the reasons discussed below vacate the district court's dismissal of that claim and remand for proceedings not inconsistent with this opinion.

■ A state may not discharge an employee for reasons which infringe on that employee's constitutionally protected interest in freedom of speech. *See Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). If an employee is discharged for making statements concerning a matter of public concern, the employee's freedom of speech may have been violated. *See Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 2897, 97 L.Ed.2d 315 (1987); *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). In such a situation, the Court must balance the employee's interest in making the statement against " 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899 (quoting *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).

■ Sheppard specifically alleges that he was dismissed in retaliation for his exercise of free speech in confronting Beerman about the judge's alleged misconduct. In order for Sheppard's claim to withstand a motion to dismiss on the pleadings, he must establish that his speech concerned a matter of public concern, and that the speech was a motivating factor in his discharge. *See Frank v. Relin*, 1 F.3d 1317, 1330 (2d. Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993). Speech will be fairly characterized as a matter of public concern if the speech "relat[es] to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146, 103 S.Ct. at 1690. Whether speech involves a public concern is a question of law to be determined on the basis of the "the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48 & n. 7, 103 S.Ct. at 1690 n. 7.

■ In analyzing the validity of Sheppard's claim, the district court made a determination that Sheppard was actually discharged for insubordination and not for his speech. We find this determination problematic for two reasons. First, the motive behind Sheppard's firing in his retaliation claim is clearly a question of fact. *See Frank v. Relin*, 1 F.3d at 1328–29. Because this question is in dispute, it was improper for the district court to answer it on a motion for dismissal on the pleadings. Second, the district court's determination that Sheppard was actually dismissed for insubordination seemed to impact its determination that Sheppard's speech was not a matter of public concern. Because the reason for Sheppard's dismissal is not relevant to the legal determination of whether his speech was a matter of public concern, we find fault with the district court's public concern analysis. Accordingly, we reverse the district court's dismissal of Sheppard's First Amendment free speech claim and remand for proceedings not inconsistent with this opinion.

#### b. *Remaining First Amendment claims*

■ Sheppard next contends that the district court erred in dismissing his claims concerning a violation of his First Amendment right of access to criminal cases, and his First Amendment right to petition the government for redress of grievances. As to these contentions we disagree. Even assuming that all the facts alleged by Sheppard in his complaint are true, we find, as did the district court, that the facts do not support either of those claims.

Sheppard claims that Beerman violated his right to access to criminal proceedings by (i) directing Sheppard to examine court files outside of the courtroom; (ii) telling certain attorneys that it would be improper for them

to speak to Sheppard about anything that Sheppard had learned during his tenure as Beerman's law clerk; (iii) refusing to field courtroom questions by those who were not parties to cases on the calendar; and (iv) admonishing Beerman to stop using the courtroom as a "revolving door" when Sheppard went in and out of Beerman's courtroom during a calendar call. Even assuming that all of the above incidents occurred, they do not indicate that Sheppard was denied a right of access to criminal proceedings. Sheppard admits that he was allowed to examine files outside of Beerman's courtroom, and that he was also permitted to listen to cases as long as he did not disrupt Beerman's courtroom proceedings or waste the court's time. Clearly, Beerman was entitled to exercise his discretion in keeping decorum in his courtroom.

Sheppard's claim that he was deprived of his right to petition for redress of grievances is equally without merit. The instant action provides such a vehicle. Accordingly, we affirm the district court's dismissal of these claims.

## II. *Fourth Amendment Claims*

### A. *Search/Seizure of Office, Desk, and File Cabinets*

■ Sheppard alleges that after the dismissal, Beerman searched his office, desk, and file cabinets in violation of his Fourth Amendment rights. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). *See also O'Connor v. Ortega*, 480 U.S. 709, 715, 107 S.Ct. 1492, 1496, 94 L.Ed.2d 714 (1987). The district court ultimately concluded that Sheppard had no reasonable expectation of privacy in his office furniture or file cabinets, and therefore any search was not violative of Sheppard's Fourth Amendment rights. For the reasons discussed below, we agree.

An "employee's expectation of privacy must be assessed in the context of the employment relation[ship]." *Ortega*, 480 U.S. at 717, 107 S.Ct. at 1497. The working relation-ship between a judge and her law clerk, as noted by the district court, is unique. Unlike a typical employment relationship where an employer may limit the information she wants to share with her employees, in order for a judicial chambers to function efficiently, an absolute free flow of information between the clerk and the judge is usually necessary. Accordingly, the clerk has access to all the documents pertaining to a case. More importantly, clerks regularly have access to the judge's confidential thoughts on a case. The judge may discuss her feelings with her clerk, or may allow the clerk access to her personal notes. In turn, the judge necessarily has access to the files and papers kept by the clerk, which will often include the clerk's notes from discussions with the judge. Because of this distinctive open access to documents characteristic of judicial chambers, we agree with the district court's determination that Sheppard had "no reasonable expectation of privacy in chambers' appurtenances, embracing desks, file cabinets or other work areas." Accordingly, the district court was correct in finding that there was no violation of Sheppard's Fourth Amendment rights.

■ Moreover, we also agree with the district court's finding that any alleged seizure done in connection with the search was similarly not violative of Sheppard's Fourth Amendment rights. Even assuming that Sheppard's belongings were seized for a short time during the judge's search of his things, a short delay by a judicial employer in returning a disgruntled employee's belongings after the employee has been fired does not rise to the level of a Fourth Amendment violation. The unlawfulness of an interference with an individual's possessory interest in property depends on the reasonableness of the seizure. *See Soldal v. Cook County*, —— U.S. ——, ——, 113 S.Ct. 538, 549, 121 L.Ed.2d 450 (1992). Because a judicial employer has an overriding interest in securing the confidentiality of chambers' work product and in making sure that an angry clerk does not attempt to confiscate or destroy important court property, the brief alleged withholding of Sheppard's belongings while they were searched was not unreasonable.

### B. *Seizure of Sheppard's Person*

Sheppard's final claim is that there was an unlawful seizure of his person when he was escorted out of the courthouse by court officers on December 11, 1990. The district court dismissed this claim finding that Sheppard's liberty was never restrained. We agree.

In order to determine whether a particular encounter between police officers and an individual constitutes a "seizure" for the purposes of the Fourth Amendment, a court must decide "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

In the present case, as correctly noted by the district court, Sheppard was "free to go anywhere else that he desired," with the exception of Beerman's chambers and the court house. Had Beerman retained Sheppard's car keys or his wallet, then perhaps Sheppard arguably could have been seized, because it would have prevented him from being "free to leave." *See, e.g., United States v. Lee*, 916 F.2d 814, 819 (2d Cir.1990) (noting factors that might suggest a seizure include "prolonged retention of a person's personal effects, such as airplane tickets or identification."). Because there are no such allegations in Sheppard's complaint, Sheppard has failed to state a claim that his person was seized.

We have examined Sheppard's remaining contentions and find them to be without merit.

### CONCLUSION

Based on the foregoing, we affirm the district court's dismissal of all of Sheppard's claims other than his First Amendment free speech claim. Regarding that claim, we find that in concluding that Sheppard failed to state a violation of his First Amendment right to free speech, the district court made certain factual determinations that were not appropriate on a motion for judgment on the pleadings. Accordingly, we vacate the district court's dismissal of Sheppard's First Amendment freedom of speech claim on the pleadings and remand for proceedings not inconsistent with this opinion. In doing so, however, we make no comment on the merits of the claim nor do we preclude the district court from re-examining the matter at some future, more appropriate time in the proceedings. Our ruling today is based only on the procedural posture in which the case came before the district court.