14-1993-cv
Salmon v. Blesser

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2014

(Submitted: June 15, 2015     Decided: September 10, 2015)

Docket No. 14-1993-cv

OLIVER SALMON,

*Plaintiff-Appellant,*

—v.—

THOMAS BLESSER, *INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS AN ALBANY, NEW YORK POLICE OFFICER,* ALBANY POLICE DEPARTMENT, CITY OF ALBANY, NEW YORK,

*Defendants-Appellees,*

JOHN DOE, 1 AND 2, *THE NAME BEING FICTITIOUS BUT INTENDED TO REPRESENT ONE OR MORE EMPLOYEES OF THE ALBANY POLICE DEPARTMENT,*

*Defendants.*

Before:

JACOBS, RAGGI, AND LYNCH, *Circuit Judges.*

1

On appeal from a judgment of dismissal entered in the Northern District of New York (D'Agostino, *J.*), plaintiff argues that his complaint alleging forcible ejection from the Albany City Court states plausible claims for relief under the First and Fourth Amendments to the Constitution, as well as under New York law prohibiting the intentional infliction of emotional distress. While an order to depart a public area does not, by itself, effect a "seizure" of the person so ordered, see Sheppard v. Beerman, 18 F.3d 147 (2d Cir. 1994), where, as here, a plaintiff alleges that an officer used physical force to restrain and control the plaintiff's movements, that allegation does plausibly plead a seizure subject to the Fourth Amendment's reasonableness requirement. Accordingly, we vacate the dismissal of plaintiff's Fourth Amendment claim against defendant Blesser, but affirm the judgment in all other respects.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

————————

KEITH FRANK SCHOCKMEL, ESQ., Albany, New York, *for Plaintiff-Appellant*.

ERIC SUGAR, Assistant Corporation Counsel, Albany, New York, *for* John J. Reilly, Corporation Counsel, Albany, New York, *for Defendants-Appellees*.

————————

2

REENA RAGGI, *Circuit Judge*:

Plaintiff Oliver Salmon sued the City of Albany, the Albany Police Department, Police Officer Thomas Blesser, and two "John Doe" employees of the Police Department under 42 U.S.C. § 1983 and New York State law for alleged constitutional and tort injuries resulting from the use of physical force to eject him from the Albany City Court. Salmon now appeals from a judgment entered on May 29, 2014, in the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*) dismissing his complaint in all respects. See Salmon v. Blesser, No. 1:13-cv-1037(MAD/RFT), 2014 WL 1883552 (N.D.N.Y. May 12, 2014). Specifically, Salmon appeals from the dismissal of his claims against Officer Blesser, in his individual capacity, under the First and Fourth Amendments as incorporated by the Fourteenth Amendment and under state law prohibiting intentional infliction of emotional distress. See Fed. R. Civ. P. 12(b)(6).[1]

---

[1] Because Salmon fails to appeal the dismissal of his equal protection claim against Blesser or the dismissal of all claims against the other defendants or against Blesser in his official capacity, we deem those claims abandoned, and we do not discuss them further in this opinion. See, e.g., Grogan v. Blooming Grove Volunteer Ambulance Corps, 768 F.3d 259, 263 n.4 (2d Cir. 2014).

3

On de novo review, see, e.g., Ricci v. Teamsters Union Local 456, 781 F.3d 25, 26 (2d Cir. 2015), we affirm the challenged dismissal of Salmon's First Amendment and emotional distress claims, but we vacate dismissal of his Fourth Amendment claim. To the extent the district court relied on Sheppard v. Beerman, 18 F.3d 147 (2d Cir. 1994), to conclude that removals from courthouses do not constitute "seizures" subject to the Fourth Amendment, we explain herein that Sheppard states a general rule that a police order to leave an area, without more, does not effect a seizure of the person so ordered. Nevertheless, where, as here, an official uses physical force to effect the ejection, so that for a time, however brief, he intentionally restrains the person and controls his movements, a plaintiff can plausibly plead a seizure subject to the Fourth Amendment's reasonableness requirement. Accordingly, we affirm in part, vacate in part, remand the case to the district court for further proceedings consistent with this opinion.

I. **Background**

A. Salmon's Removal from the Courthouse

The following facts are drawn from Salmon's complaint and are presumed to be true for purposes of this appeal. See Diaz v. Paterson, 547 F.3d 88, 91 (2d Cir. 2008).

4

On September 1, 2010, Salmon accompanied his attorney to the Albany City Court to examine a court file. Because only lawyers were permitted into the clerk's office where the file was kept, Salmon waited in a public area outside the office while his attorney went inside. As Salmon waited, Officer Blesser approached and ordered persons to leave the area. Salmon explained that he was waiting for his attorney and offered to summon counsel to confirm that fact. According to Salmon, Blesser "became enraged . . . , and without warning, grabbed [Salmon] by the collar and violently twisted his arm up behind his back and began shoving [him] toward the door." Compl. ¶ 23. When Salmon complained that Blesser was hurting him, Blesser twisted Salmon's arm further. Blesser then "physically threw [Salmon] out the door and threatened [him] with arrest" if he reentered the building. Id. ¶ 28. Salmon asserts that these actions caused him permanent physical injury.

B.    Procedural History

On August 23, 2013, Salmon filed this federal action. Defendants moved to dismiss, which motion the district court granted on May 12, 2014. See Salmon v. Blesser, 2014 WL 1883552. As to the Fourth Amendment claim of unreasonable seizure, the district court concluded that Salmon failed plausibly to plead a seizure of his person in light of Sheppard v. Beerman, wherein this court held

that a fired law clerk was not seized when court officers ordered him to leave his formerly employing judge's chambers and escorted him out of the courthouse. See id. at *6–7. Sheppard explained that no seizure occurred because the clerk remained "free to go anywhere else that he desired, with the exception of [the judge's] chambers and the court house." Sheppard v. Beerman, 18 F.3d at 153 (internal quotation marks omitted). To the extent Salmon also complained of excessive force, the district court held that such a claim was not cognizable absent a seizure. See Salmon v. Blesser, 2014 WL 1883552, at *7.

The district court afforded Salmon 14 days to amend his complaint. Rather than amend, however, Salmon let the deadline pass, whereupon he filed notice of this appeal.[2]

## II. Discussion

### A. Fourth Amendment Claim

Salmon's appeal from the dismissal of his Fourth Amendment claim against Blesser presents us with a single question: Did he allege facts sufficient to plead a plausible "seizure" of his person? See County of Sacramento v. Lewis,

---

[2] A dismissal with leave to amend is ordinarily a non-appealable order, see Slayton v. Am. Express Co., 460 F.3d 215, 224 (2d Cir. 2006), but an appeal may be pursued where the plaintiff disclaims any intention to amend or where, as here, the district court sets a deadline for amending and the plaintiff does not amend within the deadline, see id. at 224 & n.7.

523 U.S. 833, 843 (1998) (noting that "Fourth Amendment covers only 'searches and seizures'"). We conclude that he did.

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court ruled that a person is seized "when [an] officer, by means of physical force or show of authority, . . . in some way restrain[s] the liberty of a citizen." Id. at 19 n.16. Determining when "physical force" effects such restraint has normally been straightforward. See, e.g., id. at 7 (describing seizure in which officer "grabbed . . . Terry, spun him around . . . , and patted down the outside of his clothing"); United States v. Freeman, 735 F.3d 92, 96 (2d Cir. 2013) (concluding that suspect was seized when officer "grabb[ed him] around the waist . . . placing him in a 'bear hug'"). To explain when a sufficient "show of authority" effects restraint, the Supreme Court has relied on a totality-of-the-circumstances test, asking whether a reasonable person would believe that he was "not free to leave." INS v. Delgado, 466 U.S. 210, 215 (1984) (internal quotation marks omitted); accord Brendlin v. California, 551 U.S. 249, 255 (2007); United States v. Simmons, 560 F.3d 98, 105 (2d Cir. 2009). Indeed, we referenced this "free to leave" test in Sheppard v. Beerman, identifying no seizure where a fired law clerk "was free to go anywhere else that he desired with the exception of [the judge's] chambers and

the court house." 18 F.3d at 153 (internal quotation marks omitted) (observing that if authorities had retained Sheppard's car keys or wallet, he arguably would have been seized because that would have prevented him from being free to leave).

As the Supreme Court has recognized, the "free to leave" test may not be the best measure of a seizure where a person has no desire to leave the location of a challenged police encounter. See Florida v. Bostick, 501 U.S. 429, 434–36 (1991) (observing, in context of bus sweep, that "when the person is seated on a bus and has no desire to leave, the degree to which a reasonable person would feel he or she could leave is not an accurate measure of the coercive effect of the encounter"). Thus, Bostick framed the seizure inquiry as "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." Id. at 436.[3] The "request" at issue in the Bostick encounter was for a seated passenger to answer questions and allow his luggage to be searched. See id. at 431–32. Noting that such requests, by themselves, would not effect a

---

[3] This hardly renders the free-to-leave inquiry obsolete because, in many circumstances, "departure is the most obvious way to 'otherwise terminate the encounter.'" 4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.4(c), at 609 (5th ed. 2012) (quoting Florida v. Bostick, 501 U.S. at 436).

seizure if posed in a terminal lobby to passengers who could walk away, the Supreme Court remanded for consideration of whether any different conclusion obtained when the "free to decline/terminate" standard was applied to the bus sweep at issue. See id. at 434–35, 437.

The circumstances in this case are not analogous to either Bostick or Delgado. Blesser was not looking to question or search Salmon at a site where he wished to remain. Nor was he seeking to prevent Salmon from leaving the courthouse. To the contrary, Blesser actively sought Salmon's departure from the courthouse. See 4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.4(c), at 619 (5th ed. 2012) (noting distinction between police conduct conveying "not that the person was 'not free to leave,' but rather that he was 'not free to stay'" (emphasis in original)).

Police officers frequently order persons to leave public areas: crime scenes, accident sites, dangerous construction venues, anticipated flood or fire paths, parade routes, areas of public disorder, etc. A person may feel obliged to obey such an order. Indeed, police may take a person by the elbow or employ comparable guiding force short of actual restraint to ensure obedience with a departure order. Our precedent does not view such police conduct, without

9

more, as a seizure under the Fourth Amendment as long as the person is otherwise free to go where he wishes. That is the crux of <u>Sheppard v. Beerman</u>, which concluded that a person who is ordered to leave a judge's chambers and then escorted out of the courthouse has not been seized because the person remains free to go anywhere else that he wishes. <u>See</u> 18 F.3d at 153; <u>see generally</u> Stephen E. Henderson, <u>"Move on Orders" as Fourth Amendment Seizures</u>, 2008 B.Y.U. L. Rev. 1, 45 (2008) (arguing that "move on" orders are generally not Fourth Amendment seizures). Thus, if Blesser had merely ordered or escorted Salmon out of the courthouse, or even if Blesser had barred Salmon's reentry to the courthouse, the district court could well have relied on <u>Sheppard v. Beerman</u> to conclude that no "seizure" had occurred. <u>See</u> <u>Maxwell v. City of New York</u>, 102 F.3d 664, 668 n.2 (2d Cir. 1996) (citing <u>Sheppard</u> for proposition that refusing entry does not constitute seizure).[4]

---

[4] Only one of our sister circuits has concluded otherwise. <u>See</u> <u>Bennett v. City of Eastpointe</u>, 410 F.3d 810, 834 (6th Cir. 2005) (holding that "person is seized not only when a reasonable person would not feel free to leave an encounter with police, but also when a reasonable person would not feel free to <u>remain</u> somewhere, by virtue of some official action" (emphasis in original)). The circumstances of <u>Bennett</u>—an order for black bicyclists to leave the majority-white suburb of Eastpointe and return to Detroit—suggest equal protection concerns. While Salmon initially pleaded an equal protection claim, he has abandoned it on appeal, and, thus, we do not address it. <u>See</u> <u>supra</u> note 1.

Here, however, Blesser's method for removing Salmon was not simply to order or escort him from the courthouse, or to use guiding force to direct him as needed. It was physically to grab him without encountering reprisal or resistance, and to use painful force to control Salmon's movements. That distinguishes this case from Sheppard, in which no use of physical force was alleged. See Compl. ¶ 22, Sheppard v. Beerman, No. CV 91-1349 (E.D.N.Y. Apr. 16, 1991) (alleging, in case brought only against judge, that on morning at issue, before judge entered chambers, principal court officer "directed" plaintiff to leave courthouse immediately, whereupon two other officers "escorted" plaintiff out of building). Whatever other actions might effect a Fourth Amendment

---

The Supreme Court tangentially addressed departure orders in City of Chicago v. Morales, 527 U.S. 41 (1999), when it struck down Chicago's Gang Congregation Ordinance as unconstitutionally vague. Three of the six justices forming the majority were prepared to identify "an individual's decision to remain in a public place of his choice" as part of the "liberty" afforded by due process. Id. at 53–54 (opinion of Stevens, J., joined by Souter and Ginsburg, JJ.). An equal number of dissenting justices, however, disavowed such a liberty interest. See id. at 102–06 (Thomas, J., dissenting, joined by Rehnquist, C.J. and Scalia, J.) (tracing history of anti-loitering laws). Thus, the due process issue remains unsettled. See also id. at 84 (Scalia, J., dissenting) (noting that discriminatory application of challenged law could implicate equal protection). In any event, nowhere in Morales, nor in any other case, has the Supreme Court suggested that police orders directing persons to move from particular public areas while leaving them free to go anywhere else they wish effect Fourth Amendment seizures of the persons.

11

seizure of a person ordered to depart a public area, the intentional use of physical force to restrain the person and control the movements of a compliant person certainly does. See California v. Hodari D., 499 U.S. 621, 626 (1991) (stating that "word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement"); see also Webster's Third New International Dictionary 2057 (1986) (defining "seize" as, inter alia, "to possess or take by force" and "to take hold of"); 2 Samuel Johnson, A Dictionary of the English Language (8th ed. 1799) (defining "to seize" as, inter alia, "[t]o take hold of; to grip[]; to grasp" and "to take possession of by force"). Thus, at the point Blesser allegedly used such force, it no longer mattered whether his ultimate purpose was to secure Salmon's departure from the courthouse or to prevent it. For such time as Blesser held Salmon by the collar and twisted his arm behind his back, Blesser was intentionally restraining and controlling Salmon's movements, thereby transforming their encounter, even if only briefly, into a detention, which qualifies as a seizure of Salmon's person. See Brendlin v. California, 551 U.S. at 255 (recognizing that seizure can occur even where "'resulting detention [is] quite brief'" (quoting Delaware v. Proust, 440 U.S. 648, 653 (1979))); United States v. Sugrim, 732 F.2d 25, 28 (2d Cir. 1984) ("A detention

12

no matter how momentary is a seizure under the Fourth Amendment."); see generally Henderson, "Move On" Orders as Fourth Amendment Seizures, 2008 B.Y.U. L. Rev. at 16 (suggesting that use of force could transform "move on" order into seizure if interaction thereby became, "even momentarily, a detention"). Whether such a detention or seizure is reasonable is of course another question.[5]

To be clear, we do not here hold that any physical contact will transform an order to depart a public place into a Fourth Amendment seizure. But where such an order is accompanied by the use of sufficient force intentionally to restrain a person and gain control of his movements—as the collar grab and arm twisting allegedly did here—we conclude that a Fourth Amendment seizure is plausibly alleged. See generally id. (suggesting that move-on order "emphasized by a physical shove would presumably not work a seizure," whereas order accompanied by menacing "grabbing by the collar . . . might constitute a

---

[5] While brevity does not preclude seizure, the duration of the seizure may be relevant to assessing reasonableness. See generally Maryland v. King, 133 S. Ct. 1958, 1969 (2013) (observing that, although cheek swab to obtain DNA sample constituted search, intrusion was "negligible," a fact "of central relevance to determining reasonableness"); see also id. at 1977–79 (holding that cheek swab was reasonable because, in part, intrusion was "minimal"); Terry v. Ohio, 392 U.S. at 28–30 (finding a brief external pat-down reasonable).

momentary detention" amounting to seizure). Accordingly, we vacate so much of the district court's judgment as dismisses Salmon's Fourth Amendment claim against Blesser for failure to plead the requisite "seizure."

B.    First Amendment Claim

To state a First Amendment claim, a plaintiff must allege facts admitting a plausible inference that the defendant's actions restricted, or were retaliation against, speech or conduct protected by the First Amendment. See Virginia v. Black, 538 U.S. 343, 358 (2003) (stating that First Amendment protects "symbolic or expressive conduct" as well as "actual speech"); Velez v. Levy, 401 F.3d 75, 97 (2d Cir. 2005) (requiring that plaintiff's actions be "protected by First Amendment" to support First Amendment retaliation claim). Salmon asserts that Blesser violated his First Amendment right to access judicial records by forcing him out of the courthouse when he "was at the City Court Clerk's office to examine a file." Appellant's Br. 13; see Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 90–96 (2d Cir. 2004) (discussing qualified First Amendment right of access to public documents, including judicial records).

Even assuming that a seizure interfering with the right of access to court records is actionable under the First Amendment, we conclude that Salmon fails to plead such a claim for relief. Salmon does not allege that, at the time of his

14

removal, he was himself attempting to access court records. Rather, he asserts that he was waiting for his attorney, who was attempting to access records on Salmon's behalf. Salmon points to no authority, nor are we aware of any, indicating that being required to wait for one's attorney outside the courthouse, when one wished to wait for him inside, interferes with the ability to access judicial records. Thus, Salmon fails to state a claim that Blesser's actions violated his First Amendment rights.

In urging otherwise, Salmon contends that the First Amendment affords a right to be "in a public place for a lawful purpose." Appellant's Br. 14. In support, he cites to that part of the plurality opinion in <u>Richmond Newspapers, Inc. v. Virginia</u>, 448 U.S. 555 (1980) (holding that criminal trials must be open to the public), which states that people "may 'assemble for any lawful purpose,'" <u>id.</u> at 578 (opinion of Burger, C.J., joined by White and Stevens, JJ.) (quoting <u>Hague v. CIO</u>, 307 U.S. 496, 519 (1939) (Stone, J., concurring, joined by Reed, J.)). But as more recent decisions have clarified, the First Amendment protects conduct only if it has an expressive purpose, <u>see</u> <u>Clark v. Cmty. for Creative Non-Violence</u>, 468 U.S. 288, 293 n.5 (1984); <u>accord</u> <u>Church of Am. Knights of the Ku Klux Klan v. Kerik</u>, 356 F.3d 197, 205 (2d Cir. 2004); <u>see also</u> <u>Doe v. City of</u>

Lafayette, 377 F.3d 757, 764 (7th Cir. 2004) (en banc) (stating that plaintiff's prohibition from park triggers First Amendment scrutiny only if conduct "was infused with an expressive element"); cf. City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989) (rejecting right of "social association" independent of expressive purpose).[6]

Salmon does not allege or argue that he was engaged in any expressive conduct by waiting for his attorney inside the courthouse. Thus, the district court correctly dismissed his First Amendment claim against Blesser for failure to state a claim.

C.    Intentional Infliction of Emotional Distress

Salmon asserts that Blesser's alleged conduct (unprovoked grabbing of the person and twisting of the arm) was sufficiently "extreme and outrageous" to state a claim for intentional infliction of emotional distress under New York law. Howell v. N.Y. Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993). The argument fails because, under New York law, an intentional infliction tort may

---

[6] As we have already explained supra note 4, three justices in City of Chicago v. Morales, 527 U.S. at 53–54 (plurality opinion), identified a person's decision to remain in a chosen public place even without expressive purpose as part of the "liberty" protected by due process, but that view has not commanded a Supreme Court majority. Further, even those justices rejected First Amendment protection for such non-expressive activity. See id. at 52–53.

"be invoked only as a last resort," Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014) (internal quotation marks omitted), "to provide relief in those circumstances where traditional theories of recovery do not," Sheila C. v. Povich, 11 A.D.3d 120, 130, 781 N.Y.S.2d 342, 351 (1st Dep't 2004).  Thus, the New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct "falls well within the ambit of other traditional tort liability."  Fischer v. Maloney, 43 N.Y.2d 553, 557–58, 402 N.Y.S.2d 991, 993 (1978).  All four Appellate Division courts have answered the question and held that it cannot.  See Doin v. Dame, 82 A.D.3d 1338, 1340, 918 N.Y.S.2d 253, 254 (3d Dep't 2011); Leonard v. Reinhardt, 20 A.D.3d 510, 510, 799 N.Y.S.2d 118, 119 (2d Dep't 2005); Di Orio v. Utica City Sch. Dist. Bd. of Educ., 305 A.D.2d 1114, 1115, 758 N.Y.S.2d 743, 745 (4th Dep't 2003); Hirschfeld v. Daily News, L.P., 269 A.D.2d 248, 249, 703 N.Y.S.2d 123, 124 (1st Dep't 2000).

Blesser's alleged conduct would have been actionable under state law as a battery.  See Bower v. City of Lockport, 115 A.D.3d 1201, 1204, 982 N.Y.S.2d 621, 625 (4th Dep't 2014) (listing elements of battery as "bodily contact, made with intent, and offensive in nature" (internal quotation marks omitted)); Cotter v. Summit Sec. Servs., Inc., 14 A.D.3d 475, 475, 788 N.Y.S.2d 153, 154 (2d Dep't 2005)

17

(same); Zgraggen v. Wilsey, 200 A.D.2d 818, 819, 606 N.Y.S.2d 444, 445 (3d Dep't 1994) (same); see also Hassan v. Marriott Corp., 243 A.D.2d 406, 407, 663 N.Y.S.2d 558, 559 (1st Dep't 1997) ("To maintain a cause of action for battery, plaintiffs must prove bodily contact, with intent that was offensive in nature." (citation omitted)).  Moreover, even assuming that the battery here was particularly severe, it was not so far beyond the normal battery as to amount to a different category of wrong requiring a separate cause of action.

Accordingly, because other tort remedies were available to Salmon, the district court correctly dismissed his intentional infliction claim.

## III.   Conclusion

To summarize, we conclude as follows:

1. While the law in this circuit holds that an order to depart a public place that allows a person to go anywhere else he wishes does not, without more, effect a Fourth Amendment seizure, see Sheppard v. Beerman, 18 F.3d at 153, where, as here, a plaintiff alleges that the ordering official used physical force intentionally to restrain plaintiff and control his movements, the officer's conduct may or may not be reasonable, but the Fourth Amendment claim cannot be dismissed for failure plausibly to plead seizure.

18

2.  Plaintiff's First Amendment claim was correctly dismissed because he has not alleged either his engagement in expressive conduct or any impairment of his access to judicial records.

3.  Plaintiff's intentional infliction of emotional distress claim was correctly dismissed because defendant Blesser's alleged conduct falls well within the ambit of a traditional battery claim.

Accordingly, the judgment of dismissal is VACATED as to Salmon's Fourth Amendment claim and AFFIRMED in all other respects, and the case is REMANDED for further proceedings consistent with this opinion.