# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1697

_____

Dorian Johnson

*Plaintiff - Appellee*

v.

City of Ferguson, Missouri; Thomas Jackson; Darren Wilson

*Defendants - Appellants*

------------------------------

National Police Association

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 10, 2018
Filed: June 17, 2019

_____

Before SMITH, Chief Judge, WOLLMAN, LOKEN, MURPHY,[1] MELLOY, COLLOTON, GRUENDER, BENTON, SHEPHERD, KELLY, and ERICKSON, Circuit Judges, En Banc.[2]

_____

WOLLMAN, Circuit Judge.

In Johnson v. City of Ferguson, 864 F.3d 866 (8th Cir. 2017), a panel of our court affirmed the district court's ruling that Dorian Johnson had alleged sufficient facts to state 42 U.S.C. § 1983 claims of unlawful seizure and the use of excessive force against former Ferguson Police Officer Darren Wilson, as well as a claim of supervisory liability against former Ferguson Police Chief Thomas Jackson, and thus denied the defendants' motion for dismissal based upon qualified immunity. We granted their petition for rehearing en banc and vacated the panel's opinion. We now reverse the district court's order and remand with directions to dismiss the federal claims.

As alleged in Johnson's complaint, he and Michael Brown, Jr. were "peacefully and lawfully" walking down Canfield Drive in Ferguson, Missouri, at approximately 12:00 p.m. on August 9, 2014, when they were approached by Officer Darren Wilson in his marked police vehicle. As he approached the pair, Wilson slowed his vehicle and ordered them to "Get the f*ck on the sidewalk." Wilson continued to drive his vehicle several more yards, then abruptly put the vehicle in reverse and parked it at an angle so as to block the pair's path. After stopping his vehicle just inches from Brown, Wilson forcefully opened his door, striking Brown. Wilson reached through his window, grabbed Brown, and threatened to shoot his weapon. As Brown

_____

[1]The Honorable Diana E. Murphy participated in oral argument, but died on May 16, 2018.

[2]Judge Grasz, Judge Stras, and Judge Kobes did not participate in the consideration or decision of this matter.

struggled to break free, Wilson discharged his weapon twice, striking Brown in the arm. Both Brown and Johnson ran away from Wilson, who at no time ordered either of them to "stop" or "freeze," but rather fired his weapon at the two men, with several of the shots striking and killing Brown.

We agree with the panel opinion's identification of the governing issue in this case: "The crux of the motion to dismiss and this resulting appeal centers on the issue of whether there was a seizure. Johnson concedes that if there was no seizure virtually all of his claims fall away." Johnson, 864 F.3d at 872. We disagree with the panel's ruling that a seizure occurred, and thus we hold that the district court erred in not granting the defendants' motion to dismiss based upon their claim of qualified immunity.

Whatever one might say about Wilson's expletive-expressed directive that Brown and Johnson move from the street to the sidewalk, Johnson's complaint concedes that neither he nor Brown was ordered to stop and to remain in place. Johnson's decision to remain by Brown's side during Brown's altercation with Wilson rather than complying with Wilson's lawful command to return to the sidewalk was that of his own choosing. That he was able to leave the scene following the discharge of Wilson's weapon gives the lie to his argument that the placement of Wilson's vehicle prevented him from doing so. As was the case in United States v. Hayden, 759 F.3d 842, 847 (8th Cir. 2014), Wilson's police vehicle constituted no barrier to Johnson's ability to cross to the sidewalk. Any physical or weapon-related contact by Wilson was directed towards Brown alone in the first instance. In a word, then, because Johnson himself was neither physically restrained nor prevented from proceeding to the sidewalk in compliance with Wilson's directive rather than fleeing as he did, the question before us is alike to that presented in California v. Hodari D., 499 U.S. 621, 626 (1991):

The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not.

Likewise, what the Court wrote in Brendlin v. California, 551 U.S. 249, 254 (2007), is equally applicable in this case: "[T]here is no seizure without actual submission." Because there was no verbal or physical impediment to Johnson's freedom of movement, there was no submission to authority on his part even in a metaphysical sense of the meaning of that word. Accordingly, in the absence of any intentional acquisition of physical control terminating Johnson's freedom of movement through means intentionally applied, as occurred in both Brower v. County of Inyo, 489 U.S. 593, 596-99 (1989), and in Tennessee v. Garner, 471 U.S. 1, 4, 7 (1985), we conclude that no seizure occurred in this case. See also United States v. Stover, 808 F.3d 991, 995 (4th Cir. 2015); United States v. Salazar, 609 F.3d 1059, 1065-66 (10th Cir. 2010); United States v. Waterman, 569 F.3d 144, 145-46 (3rd Cir. 2009); United States v. Baldwin, 496 F.3d 215, 218-19 (2nd Cir. 2007); United States v. Letsinger, 93 F.3d 140, 143-45 (4th Cir. 1996); United States v. Hernandez, 27 F.3d 1403, 1406-07 (9th Cir. 1994); United States v. Washington, 12 F.3d 1128, 1132 (D.C. Cir. 1994).

We turn then to the claim of supervisory liability against Police Chief Jackson. In addressing this issue, the panel opinion recognized that "Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." Johnson, 864 F.3d at 877 (quoting Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997)). As we held in Moore v. City of Desloge, 647 F.3d 841, 849 (8th Cir. 2011), "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." (quoting McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005)). Further, "to maintain an action for training or supervisory liability, a plaintiff must show the failure to train or supervise caused the injury.

-4-

Because Moore failed to establish Officer Malady violated Moore's constitutional rights, Moore cannot maintain this action against either Chief Bullock or the city." Id. (internal citation omitted). In light of our holding that no seizure and thus no constitutional violation occurred in this case, Johnson's claim of supervisory liability against Chief Jackson necessarily fails, as perforce does any claim of municipal liability against the City of Ferguson. Accord Mahn v. Jefferson Cty., 891 F.3d 1093, 1099-1100 (8th Cir. 2018).

The district court's order is reversed and the case is remanded with directions to dismiss the federal claims.

MELLOY, Circuit Judge, with whom SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges, join, dissenting.

At this stage of the proceedings the majority has identified a single issue that must be addressed: Was there a Fourth Amendment seizure? On appeal, Officer Wilson argues that, under the Fourth Amendment, his actions neither qualified as a show of authority to stop nor did Johnson actually stop. The Court today holds that the facts alleged in Johnson's complaint—viewed in the light most favorable to Johnson—cannot establish a Fourth Amendment seizure. I respectfully disagree and therefore dissent.

I.      Fourth Amendment Violation

In his § 1983 claim, Johnson asserts that Officer Wilson violated the Fourth Amendment by unreasonably seizing Johnson. The Fourth Amendment prohibits "unreasonable . . . seizures" of persons. U.S. Const. amend. IV ("The right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated . . . ."); accord California v. Hodari D., 499 U.S. 621, 624 (1991). Thus,

to show a Fourth Amendment violation, a claimant must show both that he was seized and that the seizure was unreasonable.

## A.    Seizure

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force *or* show of authority,' terminates or restrains his freedom of movement through means intentionally applied."  Brendlin v. California, 551 U.S. 249, 254 (2007) (citations and emphasis omitted, emphasis added).  In claiming a seizure through a show of authority (rather than through physical force), the claimant must demonstrate both (1) a show of authority and (2) actual submission to that show of authority.  Id.

### 1.    Show of Authority

To determine whether there was a show of authority, courts apply an objective test: "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."  Hodari D., 499 U.S. at 628; accord Florida v. Bostick, 501 U.S. 429, 437 (1991) (framing the analysis as whether the officer's conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business" (citation omitted)).  This analysis is based on "the totality of circumstances surrounding the incident."  United States v. Johnson, 326 F.3d 1018, 1021 (8th Cir. 2003).  Factors relevant to the analysis include "the presence of several officers, a display of a weapon by an officer, physical touching of the person, or the 'use of language or tone of voice indicating that compliance with the officer's request might be compelled.'"  United States v. Flores–Sandoval, 474 F.3d 1142, 1145 (8th Cir. 2007) (quoting United States v. Hathcock, 103 F.3d 715, 719 (8th Cir. 1997)).  Although this is an objective, reasonable-person standard (and

although Fourth Amendment cases are necessarily fact specific), this Court has frequently set a high bar for police conduct to qualify as a Fourth Amendment show of authority. See, e.g., United States v. Cook, 842 F.3d 597, 601 (8th Cir. 2016) (holding that the defendant was not seized when police officers parked their vehicle behind defendant's parked car, activated the patrol car's "wig wag" lights, and approached the defendant's vehicle); United States v. Hayden, 759 F.3d 842, 846 (8th Cir. 2014) (holding that the defendant was not seized when a police officer pulled his vehicle alongside the defendant, shined a flashlight on him, and yelled "Police!").

Here, I believe that Officer Wilson made a show of authority communicating that Johnson "was not at liberty to ignore the police presence and go about his business." Bostick, 501 U.S. at 437. As stated above, the only facts relevant at this procedural posture are those alleged in the complaint. And the Court must accept those facts as true and view them in the light most favorable to Johnson. To recap, Johnson's complaint alleged the following facts relevant to this issue:

- As Johnson and Brown walked peacefully and "lawfully" down the road, Officer Wilson, operating a marked police vehicle, approached Johnson and Brown, slowed his vehicle to a stop, and ordered them to "Get the f*ck on the sidewalk."

- Officer Wilson continued to drive his vehicle several yards, then abruptly put his vehicle into reverse and parked his vehicle at an angle so as to block the paths of Johnson and Brown.

- Officer Wilson stopped his vehicle just inches from Brown and forcefully opened his door, striking Brown. Officer Wilson then reached through his window and grabbed Brown, who was closer to Officer Wilson than Johnson. Officer Wilson thereafter threatened to shoot his weapon. As Brown struggled to break free, Officer Wilson discharged his weapon twice, striking Brown in the arm. Surprised by Officer Wilson's use of "excessive"

-7-

force and fearing for his life, Plaintiff Johnson ran away from Officer Wilson simultaneously with Brown.

By crudely ordering Johnson to move and then abruptly reversing his vehicle and stopping it inches away and directly in Johnson's path, Officer Wilson communicated an intent to use a roadblock to stop Johnson's movement. Despite Defendants' (and amicus curiae's) argument that the roadblock did not foreclose *all* of Johnson's avenues of travel, a reasonable person would understand the roadblock's purpose was to serve as a "physical obstacle" conveying an order to stop—not an order to go around the vehicle and continue on one's way. Brower v. Cty. of Inyo, 489 U.S. 593, 599 (1989) ("We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result. It was enough here, therefore, that, according to the allegations of the complaint, Brower was meant to be stopped by the physical obstacle of the roadblock—and that he was so stopped."). Officer Wilson's actions thus would convey to the "reasonable person that he was not at liberty to ignore the police presence and go about his business." Bostick, 501 U.S. at 437.

On this issue, amicus curiae The National Police Association argues that Officer Wilson's order was nothing more than an order "simply for two pedestrians to get off the street and use the sidewalk" and that "[h]e did not order anything other than compliance with the law." Amicus Br. 8. This type of order is commonly referred to as a "move on" order and is meant to convey the message that a person is free to go anywhere else but cannot remain where he is. The parties have not cited, nor am I aware of, any Eighth Circuit precedent addressing whether move-on orders qualify as seizures under the Fourth Amendment. Other circuits have split on the issue, with the analysis frequently (but not always) turning on whether there was physical contact. See, e.g., Salmon v. Blesser, 802 F.3d 249, 251 (2d Cir. 2015) (holding that the plaintiff, who was physically removed from a courthouse—after an officer ordered him to leave, grabbed his shirt collar, twisted his arm behind his back,

and shoved him toward the door—pleaded sufficient facts to allege a Fourth Amendment violation); id. at 253 n.4 (stating that "nowhere in [any case] has the Supreme Court suggested that police orders directing persons to move from particular public areas while leaving them free to go anywhere else they wish effect Fourth Amendment seizures of the persons"); Bennett v. City of Eastpointe, 410 F.3d 810, 834 (6th Cir. 2005) (holding that a "person is seized not only when a reasonable person would not feel free to leave an encounter with police, but also when a reasonable person would not feel free to *remain* somewhere, by virtue of some official action"); Sheppard v. Beerman, 18 F.3d 147, 153 (2d Cir. 1994) (holding that a fired law clerk—ordered to leave a courthouse, escorted off the premises, and free to go anywhere else, but who was not physically removed—was not seized for purposes of the Fourth Amendment).

The majority essentially agrees with this argument and asserts there was no seizure because Johnson could merely have complied with the police officer's directive and moved to the sidewalk. Were the facts as simple as the majority and amicus curiae present, then this would be a compelling argument as to why there was no Fourth Amendment seizure. Had Officer Wilson blocked Johnson's direction of travel but then permitted him to proceed to the sidewalk and continue on his way, a reasonable person likely would believe he was "at liberty to ignore the police presence and go about his business." Bostick, 501 U.S. at 437.

But the facts are not as simple as amicus curiae contends. Officer Wilson's initial command to get on the sidewalk merely began the encounter that then continued. As alleged, Officer Wilson next escalated the encounter by abruptly putting his vehicle into reverse and parking his car at an angle blocking Johnson's path and within inches of Brown and Johnson. Officer Wilson then fought with Brown and threatened to fire his firearm. These events, viewed in a light most favorable to Johnson, would communicate to the reasonable person that Johnson "was not at liberty to ignore the police presence and go about his business." Bostick, 501

-9-

U.S. at 437. Officer Wilson's abrupt stopping of his vehicle inches away from Johnson, thereby creating a roadblock, coupled with the threat of using his service weapon, was a show of force communicating to a reasonable person the necessity to stop and not continue on one's way. Officer Wilson's actions were a "show of authority . . . at least partly directed at [Johnson], and [conveying] that he was thus not free to ignore the police presence and go about his business." Brendlin, 551 U.S. at 261.

### 2. Submission

Assuming there is a show of authority, Johnson still must demonstrate that he submitted to that show of authority. See Hodari D., 499 U.S. at 626. Whereas fleeing or refusing to comply with a show of authority does not qualify as submission to authority, id., stopping one's movement often qualifies as submission, see Brendlin, 551 U.S. at 255–56 (collecting cases). But temporarily stopping is not always sufficient to constitute a submission to authority. See United States v. Baldwin, 496 F.3d 215, 219 (2d Cir. 2007) (holding that, after a police vehicle with activated lights and sirens followed the defendant's vehicle, the defendant's "momentary stop did not constitute submission to police authority"). This analysis also depends, of course, on the facts of the case.

Here, I believe that Johnson submitted to Officer Wilson's show of authority. Johnson stopped walking when Officer Wilson placed his vehicle directly in Johnson's path. Based on the alleged facts, Johnson's stop was not a temporary, reactionary pause caused by the roadblock placed in his path. Johnson did not recommence walking and go around the vehicle. Instead, Johnson remained throughout the time that Officer Wilson reached through his window and grabbed Brown, threatened to shoot his weapon, wrestled with Brown who struggled to break free, and then twice fired his weapon.

-10-

The majority seems to imply that Officer Wilson's use of a weapon was directed at Brown only and that, while Brown may have been seized, Johnson was not. I do not believe the complaint can be parsed that finely. Both Brown and Johnson were walking together, Officer Wilson pulled his vehicle in front of both, both eventually fled, and Officer Wilson fired his weapon in the direction of both, striking and killing Brown but missing Johnson. In short, I do not believe that from the perspective of a reasonable person encountering Officer Wilson, it can be reasonably said Officer Wilson intended to seize Brown but not Johnson. If one of the two were seized, both were seized.

One difficulty surrounding this issue is whether Johnson's "submission to [the] show of governmental authority takes the form of passive acquiescence" that rises to the level of a submission to authority. Brendlin, 551 U.S. at 255. The Supreme Court in Brendlin held that "what may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." Id. at 262. There, the Court considered "whether a traffic stop subjects a passenger," who merely remained in the car throughout the traffic stop, "to Fourth Amendment seizure." Id. at 254. The Court held that the passenger was seized. Id. at 263. In so holding, the Court adopted a test for determining whether a claimant's passive acquiescence to a show of authority qualifies as submission to that show of authority: "We resolve this question by asking whether a reasonable person in [the claimant's] position . . . would have believed himself free to 'terminate the encounter' between the police and himself." Id. at 256–57 (quoting Bostick, 501 U.S. at 436).

Johnson's stop was not passive acquiescence to a show of authority. For one, Johnson did take some action to actively acquiesce to Officer Wilson's show of authority: Johnson *stopped* walking. This is more than the passive acquiescence in Brendlin where the defendant, a passenger, merely remained in his seat as the driver pulled over the vehicle. See 551 U.S. at 252, 263. Also, even assuming Johnson

passively acquiesced to the show of authority by merely remaining throughout the encounter, "a reasonable person in [Johnson's] position . . . would [not] have believed himself free to 'terminate the encounter' between the police and himself," id. at 256–57 (quoting Bostick, 501 U.S. at 436), for the reasons discussed above.

### B.     Objective Reasonableness

Johnson asserts that the alleged seizure was unreasonable and that Officer Wilson used excessive force, in violation of the Fourth Amendment.  As recognized in the panel opinion, Defendants do not appear to present any argument that, assuming there was a seizure, the seizure and use of deadly force were nevertheless reasonable. Accordingly, Defendants have abandoned any argument on this issue. See Glasgow v. Nebraska, 819 F.3d 436, 440 (8th Cir. 2016) (holding that claims not mentioned in an appeal brief are forfeited).

I would affirm the district court's denial of the appellants' motion to dismiss.

_____